**Exhibit 1_Settlement Agreement**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------x
TYRONE BANNERMAN, individually and on        :
behalf of all others similarly situated,     :
                                             :
                    Plaintiffs,              :   Case No.: 1:18-cv-06146
                                             :
        -against-                            :
                                             :
AIR-SEA PACKING GROUP INC. and RALPH         :
LAUREN CORP.,                                :
                                             :
                    Defendants.              :
                                             :
                                             :
-----------------------------------------------------------------
```

## SETTLEMENT AGREEMENT

This Settlement Agreement (herein after the "Agreement") is made and entered into by the Parties, as defined below, arising out of the above-captioned lawsuit.

## RECITALS

**WHEREAS**, Plaintiff Tyrone Bannerman filed a putative class and collective action Complaint on July 6, 2018 against Defendants Air-Sea Packing Group, Inc. ("Air-Sea") and Ralph Lauren Corporation ("RLC") in the United States District Court for the Southern District of New York, Case No. 1:18-cv-6146 (the "Lawsuit"), seeking to represent (i) a class of all persons who are or have been employed by Air-Sea as Drivers, Leads, or Helpers at a warehouse located on 35th Street, Long Island City, New York that is leased by RLC (the "RLC Warehouse") to perform delivery work for RLC during the six years preceding the filing of the Lawsuit and allegedly did not receive their regular rate of pay for all hours worked, did not receive overtime premiums for all hours worked over 40 in a given workweek, and did not receive accurate wage statements; and (ii) a collective action of all persons who are or have been employed by Air-Sea as Drivers, Leads, or Helpers at the RLC Warehouse to perform delivery work for RLC during the three years preceding the filing of the Lawsuit who allegedly did not receive overtime premiums for all hours worked over 40 in a given workweek;

**WHEREAS**, the Lawsuit seeks recovery of alleged unpaid overtime wages and liquidated damages pursuant to the Fair Labor Standards Act and alleged unpaid regular time and overtime wages, liquidated damages, and penalties pursuant to the New York Labor Law;

**WHEREAS**, following the filing of the Lawsuit, on October 4, 2018, Plaintiff Jean Alvarez, a former Air-Sea employee, filed his consent to join the case; and

**WHEREAS**, on or about March 28, 2019, counsel for Plaintiffs and counsel for Air-Sea Packing and RLC engaged in settlement discussions during a JAMS mediation before Mediator Dina Jansenson and agreed to the terms of this settlement.

**NOW THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Lawsuit on the following terms and conditions:

## 1. <u>DEFINITIONS.</u>

1.1.    The term "Air-Sea" means Air-Sea Packing Group.

1.2.    The term "Air-Sea Employer Taxes" means all taxes and withholdings Air-Sea is required by applicable laws to make arising out of or based upon the payment of employment compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.3.    The term "Claims Administrator" means a third-party administrator jointly selected by the Parties to mail the Notice Package to Class Members, administer claims, file payroll and withholding tax forms and make tax payments, distribute the settlement checks to Participating Class Members, and pay Plaintiffs' Attorneys' Fees and Plaintiffs' service payments.

1.4.    The term "Class Counsel" or "Plaintiffs' Counsel" means The Law Office of Christopher Q. Davis, PLLC.

1.5.    The term "Class" or "Class Members" means all persons employed by Air-Sea at any time during the Class Period as a Driver, Lead, or Helper who performed delivery work for RLC originating at the RLC Warehouse, or who otherwise performed delivery services for RLC pursuant to the Logistics Services Contract between Air-Sea and RLC, that involved driving to or from, or performing work at, an RLC facility (other than the RLC Warehouse) or an RLC customer location, for at least one full day.

1.6.    The term "Class Period" means the time period beginning on July 6, 2012 and ending on the date of the Court's Preliminary Approval order, or 60 calendar days from filing the filing of the Preliminary Approval motion, whichever is shorter.

1.7.    The term "Class Work" means delivery work by an Air-Sea employee during the Class Period as a Driver, Lead, or Helper originating at the RLC Warehouse, or otherwise performed for RLC pursuant to a Logistics Services Contract between Air-Sea and RLC, that involved driving to or from, or performing work at, an RLC facility (other than the RLC Warehouse) or an RLC customer location.

1.8.    The term "Court" means the United States District Court for the Southern District of New York.

1.9.    The term "Defendants" means Air-Sea and RLC, as defined herein.

1.10.   The term "Effective Date" shall refer to the later of: (i) if an appeal has been filed from the order of the Court granting Final Approval, the date on which the appeal and any subsequent proceedings are fully and finally disposed of; or (ii) if no appeal is filed, thirty-five (35) calendar days following the date of Final Approval.

1.11.   The term "Fairness Hearing" means the hearing to be scheduled by the Court to determine whether the Agreement is fair, reasonable and adequate.

1.12.   The term "Final Approval" means the order of the Court, after the Fairness Hearing approving, holding that it is a fair, reasonable and adequate settlement of the claims that were asserted or could have been asserted in the Lawsuit and directing a final judgment to that effect, and dismissing the Lawsuit with prejudice.

1.13.   The term "Gross Settlement Amount" shall mean five hundred forty-eight thousand, four hundred dollars and zero cents ($548,400.00). Except for the Air-Sea FICA Obligation, under no circumstances shall Air-Sea be obligated to make any other payments pursuant to this Settlement Agreement (other than payments to their own respective counsel) that would increase the Gross Settlement Amount above this amount.

1.14.   The term "Lawsuit" means the Lawsuit captioned *Tyrone Bannerman, individually and on behalf of others similarly situated, vs. Air-Sea Packing Group Inc., and Ralph Lauren Corp*, United States District Court for the Southern District of New York, Case No. 1:18-cv-06146.

1.15.   The term "Net Settlement Fund" means the Gross Settlement Amount less (a) attorneys' fees and, and costs awarded by the Court to Class Counsel pursuant to Section 3.2 of this Agreement; (b) Claims Administrator fees and costs; and (c) Service Payments pursuant to Section 3.3 of this Agreement, as approved by the Court.  For purposes of determining each Class Member's estimated Pro Rata Share for inclusion in the Notice, the Net Settlement Fund will be calculated  assuming the Court awards Class Counsel the attorneys' fees and costs requested hereunder and approves the requested Service Payments, and the Claims Administrator fees and costs will be deemed to be $11,841.45 (the "Estimated Net Settlement Fund").

1.16.   The term "Notice" means the Notice of Class Action Settlement attached as Exhibit A.

1.17.   The term "Notice Package" means the Notice, attached as Exhibit A and the Opt-Out Form attached as Exhibit B.

1.18.   The term "Notice Response Deadline" shall refer to a date sixty (60) calendar days from the Claims Administrator's mailing of the Notice Package (as indicated by the postmark thereupon) in accordance with Section 2.6.1 herein. If a Notice Package

is returned undeliverable, the Notice Response Deadline for such Class Member shall be sixty (60) calendar days from the date of the second mailing, but no more than ninety (90) calendar days from first mailing. It is the date by which Class Members must mail an Opt-Out Form attached as Exhibit B, or submit and objects, as set forth in this Agreement.

**1.19.**   The term "Opt-Out Form" means the form exemplified in Exhibit B.

**1.20.**   The term "Parties" means Plaintiffs, Air-Sea, and RLC, collectively.  In referring generally to one of the Parties, the term "Party" is used.

**1.21.**   The term "Plaintiffs" means plaintiffs Tyrone Bannerman and Jean Alvarez, individually and in their capacity as a party seeking to act as class representative.

**1.22.**   The term "Participating Class Members" shall refer to the Plaintiffs and any Class Member that does not file an Opt-Out Form by the Notice Response Deadline.

**1.23.**   The term "Plaintiffs' Attorney's Fees" means the amount awarded to Plaintiffs' Attorneys by the Court for representing Plaintiffs and the Class in the Lawsuit, but not to exceed one-hundred eight-two thousand, seven hundred and ninety-eight dollars and seventeen cents ($182,789.17) plus any actual costs expended by Plaintiffs' Attorneys in litigating this Lawsuit.

**1.24.**   The term "Preliminary Approval" means the issuance of an order by the Court, substantially in the form attached as Exhibit C to this Settlement Agreement, holding preliminarily that it is a fair and reasonable settlement of the claims that were asserted or could have been asserted in the Litigation.

**1.25.**   The term "Pro Rata Share" means the gross amount (before income tax withholding and payroll tax deductions required by applicable laws) allocated to each Participating Class Member from the Net Settlement Fund. The Pro Rata Share shall be calculated as described in Section 3.5.

**1.26.**   The term "Qualified Workday" is a day in which a Class Member performed four (4) or more hours of Class Work as shown in Air-Sea's business records.

**1.27.**   The term "QSF" shall refer to a Qualified Settlement Fund to be created by the Claims Administrator to distribute settlement funds to Participating Class Members and pay all other amounts contemplated by this Agreement.

**1.28.**   The term "Released Parties" or "Released Party" means Air-Sea and/or RLC, their past, present, and future direct and indirect parent companies, affiliates, and subsidiaries, predecessors; successors, and assigns, and each of their respective past, present, and future officers, directors, employees, agents, attorneys, insurers, stockholders, representatives, heirs, administrators, executors, successors, and assigns, and any other person or entity acting on their behalf.

**1.29.**    The term "RLC" means Ralph Lauren Corporation.

**1.30.**    The term "RLC Warehouse" means the warehouse located on 35th Street, Long Island City, New York that is leased by RLC.

**1.31.**    The term "Settlement" means the complete settlement and conclusion of this litigation and all related claims effectuated by this Agreement.

**1.32.**    The term "Settlement Distribution Check" shall refer to a check issued by the Claims Administrator to a Participating Class Member pursuant to Section 3.8 of this Agreement.

## 2.  SETTLEMENT APPROVAL.

**2.1.**    Stay of Litigation. The Parties hereby agree to a stay of all discovery, deadlines, and other activity in or related to the Lawsuit other than in furtherance of this Agreement unless and until the Court enters an order rejecting the Agreement.

**2.2.**    Mutual Full Cooperation. As soon as practicable after execution of this Agreement, the Parties shall take all necessary steps to secure the Court's Final Approval of this Agreement and to effectuate all aspects of this Agreement. The Parties and Counsel agree to cooperate fully with each other to obtain approval of and to accomplish the terms of this  Agreement.

**2.3.**    Approval Procedure.  The Agreement requires the occurrence of all of the following events:  (a) execution of the Agreement by the Parties; (b) submission of the Agreement to the Court together with Parties Joint Motion for Preliminary Approval; (c) entry of an Order by the Court granting Preliminary Approval of the Settlement; (d) Court approval of the method of distribution and the form and content of the Notice Package; (e) distribution of the Notice to the Class Members; (f) submission to the Court of the Parties' Joint Motion for Final Approval and Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs and Service Payments; (g) a Court order granting Final Approval; (h) occurrence of the Effective Date; (i) distribution of Settlement Distribution Checks within twenty-one (21) calendar days of the Effective Date.

**2.4.**    CAFA Notice. No later than ten (10) business days after Plaintiffs submit their Motion for Preliminary Approval, Defendants shall timely provide notice as required by the Class Action Fairness Act ("CAFA").

**2.5.**    Duties of the Parties Following Preliminary Approval.

**2.5.1.**    No later than ten (10) business days after Class Period ends Air-Sea will provide the Claims Administrator with a list of all Class Members that provides the following information for each Class Member:  name, current or last known addresses, email address, social security number, and number of Qualified Workdays worked in the Class Period, and will provide

Plaintiffs' Attorneys with a copy of that list, provided, however, this copy will not contain social security numbers.

**2.5.2.** No later than fifteen (15) business days prior to the Fairness Hearing, or pursuant to a schedule set by the Court, the Parties file a Joint Motion for Final Settlement Approval and Class Counsel shall file a separate Motion for Attorneys' Fees and Costs.

**2.6.** <u>Notices, Opt-outs, and Objections</u>.

**2.6.1.** <u>Notices to Class Members.</u>

**A.** Within ten (10) business days of either (i) receiving the information described in Section 2.5.1; or (ii) Preliminary Approval, whichever is later, the Claims Administrator shall mail the Notice to the each Class Member (a) by First Class United States mail, postage prepaid, to his/her last known residential address as reflected in Air-Sea's personnel records, and (b) by email to each of the Class Member's last known personal email address, to the extent that personal email addresses are included in Air-Sea's personnel records. Each Class Member will receive the Notice Package and an opportunity to object pursuant to Section 2.6.3 below. Each Class Member, except for the Plaintiffs, may submit an Opt-Out Form pursuant to Section 2.6.2 below.

**B.** With respect to Notices sent by email, no follow-up or supplemental distribution shall be performed for any email message returned as undeliverable or as to which receipt or review by the Class Member is unconfirmed. With respect to Notices sent by postal mail, the Claims Administrator shall perform one standard Level 2 Skip Trace in the manner customarily performed in an effort the correct address of any Class Member for whom the Notice is returned by the U.S. Postal Service as undeliverable. The Claims Administrator shall notify Counsel of any such undeliverable post mail Notice. The Claims Administrator shall send one remailing to those Class Members whose first postal mailing is returned as undeliverable. The Claims Administrator shall keep accurate records of the dates on which it sends Notices. If a new address is not obtained from the U.S. Post Office or through a standard Level 2 skip tracing, no further efforts are required, and these shall be deemed adequate notice.

**2.6.2.** <u>Opt-outs.</u>

**A.** All Class Members, except for the Plaintiffs, can choose to opt out of the settlement solely to the extent that this Agreement pertains to such Class Members' rights under the NYLL.

**B.** To opt out, such Class Member must send an Opt-Out Form to the Claims Administrator by first-class mail. To be effective, an Opt-Out Form must be postmarked no later than the applicable Notice Response Deadline and must be

signed, unless a Class Member makes a written showing of either excusable neglect or hardship satisfactory to the Claims Administrator.   Any Class Member who timely submits a valid Opt-Out Form will not receive a Pro Rata Share. Class Members may withdraw their Opt-Out Forms at any time provided such withdrawal is in writing and received by the Claims Administrator no less than 24 hours before the Fairness Hearing.

**C.**   If a timely but incomplete or defective Opt-Out Form is received by the Claims Administrator on or before the Notice Response Deadline the Claims Administrator shall, as promptly as reasonably possible, but no later than fourteen (14) days after such receipt, notify the Class Member in writing of the defects in the Opt-Out Form, and give the Class Member an additional ten (10) days after such written notification to cure any defect.   If the Class Member fails to rectify the deficiencies noted by the Claims Administrator, the Class Member may, in the case of written proof of hardship as determined in good faith in writing by the Claims Administrator, be awarded an additional fifteen (15) days to perform all necessary acts.

**D.**   If a Class Member fails to opt out as set forth herein, fails to cure a defective Opt-Out From as set forth in Section 2.6.2(C) above, or withdraws his/her opt out, he/she shall be deemed to be a Participating Class Member in this Agreement for purposes of the release of claims set forth in Section 4.

**E.**   The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Form that it receives and shall, within three (3) business day of receipt, serve copies of each such Opt-Out Form on the Parties.  Class Counsel shall file copies of each such Opt-Out Form with the Joint Motion for Final Approval. The Claims Administrator shall retain the stamped originals of all such Opt-Out Forms, and originals of all envelopes accompanying them, in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement. Within one (1) week following the expiration of the Notice Response Deadline, the Claims Administrator shall e-mail a final list of all Class Members who submitted an Opt-Out Form to the Parties.

**F.**   The Parties agree that neither they nor their counsel will solicit or otherwise encourage directly or indirectly any Class Member to submit and Opt-Out Form or appeal from the Final Judgment.

**2.6.3.**   <u>Objections.</u>

**A.**   Only Participating Class Member can object to this Agreement.  A Participating Class Member can object to this Agreement solely to the extent that this Agreement pertains to such individual's rights under the Agreement.

**B.**   A Participating Class Member who wishes to so object must do so in writing. To be considered, a written objection must be mailed to the Claims Administrator via First-Class United States Mail and be received by the Claims

Administrator no later than the applicable Notice Response Deadline. The written objection must be signed and must include the words, "I object to the Settlement proposed in the *Bannerman v. Air-Sea* litigation as it relates to my rights under the Agreement," as well as all of the reasons for the objection. Any reasons not included in the written objection shall not be considered. The written objection must also include the name (and former names, if any), and current address for the Participating Class Member making the objection. The Claims Administrator shall stamp and serve within three (3) business day of receipt, copies of each objection to the Parties.  Class Counsel shall file the date-stamped objections with the Court as part of the Parties' Joint Motion for Final Approval.

**C.**   A Participating Class Member who has submitted timely objections has the right to appear at the Fairness Hearing either in person or through counsel hired at his/her expense.  No Participating Class Member may present or support an objection at the Fairness Hearing unless he or she has filed a timely, valid objection that complies with all procedures provided in this section and the previous section.  No Participating Class Member may present or support an objection at the Fairness Hearing based on a reason not stated in his or her written objections.

**D.**   A Class Member who has submitted an Opt-Out Form pursuant to Section 2.6.2 of this Agreement may not submit objections to the Agreement because by submitting an Opt-Out Form their rights are no longer impacted by this Agreement.

**E.**   The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

## 3.   <u>SETTLEMENT PAYMENTS.</u>

**3.1.**   The Gross Settlement Amount and Net Settlement Fund shall be used for the payment of the amounts set forth below.

**3.2.**   <u>Attorneys' Fees And Costs.</u> Class Counsel shall petition the Court for an award of attorneys' fees and costs at the same time that the Parties file their Joint Motion for Final Settlement Approval. Class Counsel agrees that any award of attorneys' fees shall be one-third (1/3) of the Gross Settlement Amount, i.e., one-hundred eight-two thousand, seven hundred and ninety-eight dollars and seventeen cents ($182,798.17). Class Counsel further agrees that any award of costs shall not exceed $3,841.45.  Defendants will not oppose any request for attorneys' fees or costs by Class Counsel meeting these conditions so long as the Court approves this Agreement in substantially the form in which it was submitted for approval. To the extent the Court awards a lesser amount in attorneys' fees or costs, this Agreement shall remain in full force and effect and be binding upon the Parties, with the amount of such reduction to be added to the Net Settlement Fund for distribution of the Pro Rata Shares to the Participating Class Members according to the procedures herein.

**3.3.**    Service Payments. No more than $20,000.00 shall be paid from the Gross Settlement Amount as "Service Payments" to the Plaintiffs.  Defendants shall not oppose any request for Service Payments meeting this condition and shall not oppose Plaintiffs' recommended allocation of the Service Payments. The Service Payments are to be allocated as follows: Plaintiff Tyrone Bannerman and Jean Alvarez shall each receive Ten Thousand dollars ($10,000.00). In the event the Court denies approval of the Service Payments or reduces the amount of the Service Payment to any individual, such individual(s) shall receive only the amount, if any, as the Court has approved, plus their Pro Rata Share pursuant to Section 3.4. To the extent the Court awards a lesser amount in Service Payments, this Agreement shall remain in full force and effect and be binding upon the Parties, with the amount of such reduction to be added to the Net Settlement Fund for distribution of the Pro Rata Share to Participating Class Members according to the procedures herein.

**3.4.**    Claims Administrator Fees and Costs.    The fees and costs of the Claims Administrator, as approved by the Parties, shall be paid from the QSF.

**3.5.**    Distribution of the Net Settlement Fund.

    **3.5.1.**  Each Participating Class Member shall be entitled to a payment from the settlement in the amount of his/her Pro Rata Share.

    **3.5.2.**  Each Participating Class Member's Pro Rata Share will be based on the number of Qualified Workdays worked by such Participating Class Member during the Class Period.

    **3.5.3.**  The Pro Rata Share shall be calculated as follows:  By dividing the total number of Qualified Workdays in the Class Period for each Participating Class Member by the total number of Qualified Workdays in the Class Period for all Participating Class Members and multiplying that percentage by Net Settlement Fund.

    **3.5.4.**  For purposes of the Notices, each Class Member will be notified of their estimated Pro Rata Share based on the number of Qualified Workdays in the Class Period for such Class Member by the total number of Qualified Workdays in the Class Period for all Class Member and multiplying that percentage by the Estimated Net Settlement Fund.

    **3.5.5.**  In the event of a dispute regarding the number of Qualified Workdays, counsel for the Parties shall meet and confer over the matter.  If they are unable to resolve the dispute, the matter shall be referred to the Court for a final, binding, and non-appealable decision.

    **3.5.6.**  In the event any amount of the Net Settlement Fund is not paid to the Participating Class Members (whether because of delivery failures, failures by Participating Class Members to timely and properly present Settlement Distribution Check for payment, or otherwise), such amount shall be

refunded to Air-Sea. Such refund payment shall be made by the Administrator on or around ninety (90) calendar days following the final deadline for cashing the Settlement Distribution Checks.

**3.6.** Settlement Administration.

**3.6.1.** The Claims Administrator shall be responsible for administering the Settlement, including without limitation establishing the QSF, printing and mailing the Notice Packages, calculating each Participating Class Member's Pro Rata Share, distributing the payments called for by this Agreement, withholding taxes from such payments, issuing IRS Forms W-2 and 1099 in connection with such payments, and paying all employer-side tax obligations arising out of such payments.

**3.6.2.** The Claims Administrator shall calculate Air-Sea's Employer Taxes obligation, which Air-Sea will deposit into the QSF along with the Gross Settlement Amount so that the Claims Administration can then pay the standard employer-side tax obligations for payments to be reported on a Form W-2, including the Employer Federal Insurance Contributions Act (FICA) amount, from the QSF.

**3.7.** No more than ten (10) business days after the Effective Date, Air-Sea shall transfer the Gross Settlement Amount to the QSF. No more than twenty-one (21) calendar days after the Effective Date, the Claims Administrator shall mail Settlement Distribution Checks to all Participating Class Members, mail and/or wire the attorneys' fees and costs to Class Counsel, and mail Service Payments to the Plaintiffs.

**3.8.** Settlement Distribution Checks

**3.8.1.** Following the Effective Date, all Participating Class Members shall receive a Settlement Distribution Check containing their Pro Rata Share of the Net Settlement Fund.

**3.8.2.** The Settlement Distribution Checks issued to the Participating Class Members shall contain a Consent to Join and Release of Claims that, subject to fit on the back of the Settlement Distribution Check, is substantively the following:

"By cashing this check I am (1) consenting to be a party plaintiff in *Bannerman v. Air-Sea Packaging Group Inc. and Ralph Lauren Corp.,* Case No. 1:18-cv-06146, which alleges violations of the Fair Labor Standards Act and the New York Labor Law (the "Lawsuit"), and (2) releasing any and all claims asserted or unasserted, known and unknown, against Air-Sea Packaging Group Inc. and Ralph Lauren Corp. under the Fair Labor Standards Act, the New York Labor Law, and any other claims concerning non-payment of wages for work performed in the period between July 6,

2012 through _____, 2019, including without limitation claims which arise from the non-payment of wages for hours worked or rest periods, overtime work performed, missed meal or rest periods, and violations of minimum wage, overtime, wage notice, and wage statement requirements. My endorsement or negotiation of this instrument constitutes full acceptance by me and my successors and assigns of all the terms and conditions of the Settlement Agreement in the Lawsuit, as approved by the Court, including but not limited to the Release included in the Settlement Agreement and reproduced in the Notice."

3.8.3.   Each Participating Class Member shall have ninety (90) calendar days from the check mailing date to endorse the Settlement Distribution Check issued to him/her and present it for payment. Each Settlement Distribution Check will include a notice clearly stating that he/she has 90 calendar days from the check mailing date to endorse and present the Settlement Distribution Check for payment (the "Acceptance Period"). If a Settlement Distribution Check is not presented for payment during the Acceptance Period it will be voided.

3.8.4.   To be accepted for payment, the Settlement Distribution Check must be endorsed by the Participating Class Member with no alteration to the language thereupon.

3.9.   <u>Tax Reporting.</u> All payments to the Participating Class Members under this Settlement Agreement shall be allocated as 50% lost wages, less all applicable withholdings and deductions required by law, which shall be reported as wage income on a IRS Form W-2 to be issued to Participating Class Members; and 50% as non-wage income, which will be reported on IRS Form 1099. The 50% allocated as wages is subject to deductions for employee FICA obligations (at the rate of 7.65%) and the withholding of all applicable local, state, and federal income and payroll taxes.  The amount of federal income tax withholding will be based upon a flat withholding rate of twenty-eight percent (28%) (Treas.  Reg.  § 3l.3402(g)-l(a)(2)), income tax withholding with respect to New York State will be based upon a flat withholding rate of nine point seventy-seven percent (9.75%) (New York State Personal Income Tax Regulations § 171.4(b)(1)), and income tax withholding with respect to New York City will be based upon a flat withholding rate of four percent (4.0%) (New York City Personal Income Tax on Residents Regulations § 291.1(b)), in addition to any other applicable federal, state, or local employment or other taxes.  The 50% allocated as non-wage income will have no taxes withheld by the Claims Administrator, or paid by Air-Sea, because those payments are attributable to the settlement of all claims with respect to NYLL penalties and FLSA and NYLL liquidated damages.

## 4.  **RELEASES.**

4.1.   <u>The Named Plaintiffs Release</u>. Upon the Effective Date, in consideration of the Service Payments approved by the Court, the Plaintiffs shall be deemed to have released the Released Parties from any and all liability, damages, expenses, or costs for any and all lawsuits, charges, claims, complaints, liabilities, obligations, promises, agreements, controversies, damages,

actions, omissions, claims for relief, suits, rights, demands, costs, and expenses (including attorney's fees and costs actually incurred) of any nature whatsoever, known or unknown, suspected or unsuspected, which the Plaintiffs now have or claim to have, or which the Plaintiffs at any time heretofore had or claim to have, or which the Plaintiffs at any time hereafter may have or claim to have against each or any of the Released Parties, arising out of or related to any matter, event, fact, act, omission, cause, or thing which existed, arose, or occurred on or prior to the Effective Date, including without limitation: (w) all claims for discriminatory, retaliatory, or other unlawful termination of employment; (x) all other claims for discrimination or retaliation under federal, New York State, New Jersey (including claims for violation of the New Jersey Conscientious Employee Protection Act), New York City or other applicable laws, including without limitation the New York State Human Rights Law and the New York City Human Rights Law; (y) claims for unpaid minimum wages, unpaid regular wages, unpaid overtime, unpaid bonuses or other compensation, unpaid breaks, or missed breaks or meal periods, and related claims for liquidated damages, pre-judgment interest and attorneys' fees, under the FLSA and NYLL and any other applicable laws; and (z) all claims for penalty payments and related claims for pre-judgment interest and attorneys' fees, under the NYLL for failure to provide statutorily compliant wage notices and wage statements to employees. This release also includes, but is not limited to, any claim for negligent or intentional infliction of emotional distress, conversion, defamation, fraud, violation of public policy, wrongful termination, retaliation, breach of contract, unfair business practices or any other claim, however styled, relating to or arising out of the Plaintiffs' employment with, or separation of employment from, Air-Sea, or alleged joint employment with, or separation of employment from, RLC (the "Named Plaintiffs Release").

  **4.1.1.** The Named Plaintiffs Release constitutes a full and final release covering all known, unknown, anticipated and unanticipated injuries, debts, claims or damages within its scope to the Plaintiffs. The Plaintiffs affirm their intention to release not only those claims within the scope of this Named Plaintiffs Release against the Released Parties which the Plaintiffs know about, but also those claims within the scope of the Named Plaintiff Release about which the Plaintiffs do not know.

  **4.1.2.** The Plaintiffs acknowledge that, by entering into this Agreement, they no longer have the right to assert any claim or lawsuit of any kind attempting to recover money or any other relief against any Released Party for alleged acts or injures within the scope of the Named Plaintiff Release.

 **4.2.** <u>NYLL and Other State and Local Claims.</u> Upon the Effective Date, all Class Members, except those who have opted out of this Settlement pursuant to Section 2.6.2, shall be deemed to have released the Released Parties from any and all liability, damages, expenses, or costs arising under the NYLL and any other applicable state or local wage and hour law, including without limitation claims for attorneys' fees and costs arising therefrom, for the entire Class Period (the "State/Local Release").

  **4.2.1.** The State/Local Release constitutes a full and final release covering all known, unknown, anticipated and unanticipated injuries, debts, claims or damages within its scope to the Class Members, except those who have

opted out of this Settlement pursuant to Section 2.6.2.  The Class Members, except those who have opted out of this Settlement pursuant to Section 2.6.2, affirm their intention to release not only those claims within the scope of the State/Local Release against the Released Parties which they know about, but also those claims about which they do not know.

4.2.2.  The Class Members, except those who have opted out of this Settlement pursuant to Section 2.6.2, acknowledge that, pursuant to the State/Local Release, they shall no longer have the right to assert any claim or lawsuit of any kind attempting to recover money or any other relief arising under the NYLL or any other applicable state or local wage and hour law against any Released Party for alleged acts or injures within the scope of the State/Local Release,   including without limitation claims which arise from the non-payment of wages for hours worked or rest periods, overtime work performed, missed meal or rest periods, and violations of minimum wage, overtime, wage notice, and wage statement requirements.

**4.3.**   <u>FLSA Claims</u>. By receiving and presenting a Settlement Distribution Check for payment, a Class Member shall be deemed (1) to have consented to join the Litigation for purposes of asserting FLSA claims, and (2) to have released the Released Parties from any and all liability, damages, expenses, or costs arising under the FLSA, including without limitation claims for attorneys' fees and costs arising therefrom, for that portion of the Class Period pertaining to FLSA claims, which is the time period beginning on July 6, 2015, and ending on the date of the Court's Preliminary Approval order, or 60 calendar days from filing the filing of the Preliminary Approval motion, whichever is shorter (the "FLSA Release").

4.3.1.  FLSA Release constitutes a full and final release covering all known, unknown, anticipated and unanticipated injuries, debts, claims or damages within its scope to a Class Member who presented a Settlement Distribution Check for payment.  The Class Members who present a Settlement Distribution Check for payment affirm their intention to release not only those claims within the scope of the FLSA Release against the Released Parties which they know about, but also those claims within the scope of the FLSA Release about which they do not know.

4.3.2.  The Class Members who presented Settlement Distribution Checks for payment acknowledge that, pursuant to the FLSA Release, they shall no longer have the right to assert any claim or lawsuit of any kind attempting to recover money or any other relief arising under the FLSA against any Released Party for alleged acts or injures within the scope of the FLSA Release.

## 5.   **TERMINATION OF THE SETTLEMENT AGREEMENT**.

**5.1.**   <u>Failure To Approve Or Dismiss.</u> If the Court, for any reason, does not grant Preliminary Approval or Final Approval to this Agreement in substantially the form as signed by

the Parties, or fails to enter a judgment and dismissal with prejudice of the Lawsuit, or if the Court's grant of final judgment and dismissal is reversed, modified, or declared or rendered void, on appeal or otherwise, then this entire Agreement shall be rendered null and void.

**5.2.** <u>Effect Of Termination.</u> If the Agreement is rendered null and void, or otherwise terminated according to the terms set forth herein, then: (a) neither this Agreement, nor any of the related negotiations or proceedings, shall be of any force or effect, and no Party shall be bound by any of its terms; (b) all Parties shall stand in the same position, without prejudice, as if the Agreement had not been entered or filed with the Court; (c) nothing in this Agreement, or any of the related negotiations or proceedings, shall be admissible for any purpose, including without limitation in connection with Defendants' rights under 29 U.S.C. § 216(b) and/or Fed. R. Civ. P. 23, to contest conditional or class certification in the Lawsuit or any other legal action asserting substantially the same claims as those asserted in the Lawsuit; and (d) Defendants shall have no obligation to make any payment to Class Counsel or the Plaintiffs.

**5.3.** <u>The Settlement Is Non-Admissible.</u> Neither this Agreement, nor any ancillary documents, actions, statements or filings in furtherance of settlement shall be admissible or offered into evidence in the Litigation or any other action for any purpose whatsoever, except to seek enforcement of the terms of the Settlement Agreement.

## 6. **DENIAL OF LIABILITY**.

**6.1.** This Agreement is a compromise of disputed claims. Defendants deny any and all allegations of wrongdoing or illegal conduct alleged by Plaintiffs in the Lawsuit, and Defendants deny that RLC is or was an employer of any Class Members. The exchange of consideration contemplated by this Agreement, and any other acts, omissions, or statements by the Parties, are not to be construed as any admission of liability of any Party for any claims or defenses, with liability being expressly denied. Neither this Agreement nor anything contained in the Agreement, the settlement proposals exchanged by the Parties, or any motions or Orders filed or entered pursuant to the Agreement, shall be interpreted or construed as an admission or concession of liability, culpability, or wrongdoing by Defendants or Plaintiffs, or an admission or concession by RLC that it is or was an employer of any Class Members.

## 7. **GENERAL PROVISIONS.**

**7.1.** <u>Entire Agreement</u>. This Agreement constitutes the entire agreement of the Parties hereto with respect to all of the matters addressed herein, and supersedes all prior or contemporaneous discussions, communications, or agreements, expressed or implied, written or oral, by or between the Parties.

**7.2.** <u>Governing Law</u>. This Agreement shall be interpreted and governed according to the law of the State of New York, except to the extent superseded by federal law.

**7.3.** <u>Retention of Jurisdiction</u>. The Court shall retain jurisdiction over: (a) the interpretation and implementation of this Agreement; (b) any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and/or the settlement

contemplated thereby; and (c) any disputes arising out of this Agreement, including actions or motions to enforce this Agreement.

**7.4.**   Binding On Successors. The provisions of the Agreement and releases shall be binding upon and shall inure to the benefit of the successors, assigns, and administrators of the respective Parties.  The Agreement and rights to receive payments under this Agreement may not be assigned by any of the Parties or any Class Members and any assignment shall be null and void *ab initio,* except that this Agreement may be assigned by Air-Sea or RLC to a purchaser of substantially all of its assets.

**7.5.**   Appeal. In the event of a timely appeal from the Court's judgment and dismissal of the Litigation pursuant to a Final Approval order, the judgment shall be stayed and the actions required by this Agreement shall not take place until all appeal rights have been exhausted by operation of law.

**7.6.**   No Amendment Without A Writing. The Parties hereto agree that no amendment or modification of this Agreement shall be binding unless made in writing, signed by the Parties, and approved by the Court.  Any waiver of the breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

**7.7.**   Notice. Unless otherwise specifically provided, all notices, demands, or other communications in connection with this Settlement Agreement shall be sent via United States mail, with a copy by e-mail addressed as follows:

To the Plaintiffs:

> Christopher Q. Davis, Esq.
> Mariyam Hussain, Esq.
> The Law Office of Christopher Q. Davis, PLLC
> 80 Broad Street, Suite 703, New York, NY 10004

To Defendants:

> Jay P. Warren
> Bryan Cave Leighton Paisner LLP
> 1290 Avenue of the Americas
> New York, New York 10104

**7.8.**   Construction And Interpretation. The Parties agree that the terms and conditions of this Agreement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Agreement. Section titles and headings are inserted as a matter of convenience and for reference and in no way define, limit, extend, or describe the scope of this Agreement or any of its provisions. Each term of this Agreement is contractual and not merely a recital.

**7.9.**   Counterparts. This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original,

and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties. A facsimile, digital image, or copy of this Agreement shall have the full force and effect of, and be admissible as, an original.

**7.10.**   <u>No Active Public Disclosure</u>. While the Parties agree and understand that the terms of this agreement are public and may be viewed on the Court's docket, as a material inducement for Defendants to enter into this Agreement, Plaintiffs and Class Counsel, on behalf of itself and all of its lawyers, staff, and any other lawyer or law firm with which it is affiliated, hereby agree and represent that they: (i) shall not publicize, either electronically (e.g., through a firm-sponsored Website or on Facebook, Twitter or the like) or by any other means, this Agreement, the terms of the Agreement, and/or the Lawsuit; (ii) have not contacted any representative of the media (e.g., press, TV, radio, Internet), and shall not make any press release, public statement, or statement to any third party, concerning this Agreement, the terms hereof and/or the Lawsuit and shall not do so in the future.

**IN WITNESS THEREOF**, the Parties hereto and their Counsel have executed the Settlement Agreement as of the date specified below.

*[Signature Pages to Follow]*

I HAVE READ THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE AND, UNDERSTANDING ALL OF ITS TERMS, SIGN IT OF MY FREE WILL.


July 3, 2019                                          pp/[1]
Date                                                 Tyrone Bannerman


I HAVE READ THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE AND, UNDERSTANDING ALL OF ITS TERMS, SIGN IT OF MY FREE WILL.

July 3, 2019                                          pp/
Date                                                 Jean Alvarez


SOLELY WITH RESPECT TO THE OBLIGATIONS SET FORTH IN SECTION 7.10


                                                     The Law Office of Christopher Q. Davis, PLLC


July 3, 2019
Date                                                 Christopher Q. Davis

---

[1] Lead Plaintiffs were not able to sign the agreement due to the holiday weekend. They authorized Mariyam Hussain, Esq., Class Counsel, to sign on their behalf. Plaintiffs will file an executed agreement after the July 4 holiday.

I HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE, AND UNDERSTANDING ALL ITS TERMS, I SIGN IT ON BEHALF OF AIR-SEA PACKING GROUP, INC. AS THE FREE ACT AND DEED OF AIR-SEA PACKING GROUP, INC.

Date: August 19, 2019                    Air-Sea Packing Group, Inc.
                                         By: _____
                                         Title: _CEO AIR SEA PACKING_____


I HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE, AND UNDERSTANDING ALL ITS TERMS, I SIGN IT ON BEHALF OF RALPH LAUREN CORPORATION AS THE FREE ACT AND DEED OF RALPH LAUREN CORPORATION

Date: August ____, 2019                  Ralph Lauren Corporation
                                         By: _____
                                         Title: _____

600586342.15

I HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE, AND UNDERSTANDING ALL ITS TERMS, I SIGN IT ON BEHALF OF AIR-SEA PACKING GROUP, INC. AS THE FREE ACT AND DEED OF AIR-SEA PACKING GROUP, INC.

Date: August \_\_\_, 2019                                       Air-Sea Packing Group, Inc.
                                                                          By:_____
                                                                          Title: _____


I HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE, AND UNDERSTANDING ALL ITS TERMS, I SIGN IT ON BEHALF OF RALPH LAUREN CORPORATION AS THE FREE ACT AND DEED OF RALPH LAUREN CORPORATION

Date: August 19, 2019                                       Ralph Lauren Corporation
                                                                          By:_____
                                                                          Title: SVP, Assoc GC

600586342.15

**EXHIBIT 2**

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
## AND FINAL FAIRNESS HEARING

**TO: ALL PERSONS EMPLOYED BY AIR-SEA PACKING GROUP, INC. ("AIR-SEA") AS A DRIVER, LEAD, AND/OR HELPER TO PERFORM DELIVERY WORK FOR RALPH LAUREN CORPORATION ("RLC" OR "RALPH LAUREN") STARTING AT AN RLC WAREHOUSE LOCATED ON 35TH STREET IN LONG ISLAND CITY,  OR TO PERFORM CERTAIN OTHER RLC DELIVERY WORK IN THE TRI-STATE AREA, AT ANY TIME BETWEEN JULY 6, 2012 AND , 2019.**

A federal court authorized this notice. This is not a solicitation from a lawyer.

Based on information in Air-Sea records, you were employed by Air-Sea as a Driver, Lead and/or Helper to perform certain delivery work for RLC (as described in the next paragraph) at some point between July 6, 2012   and              , 2019 (the "Class Period"), and are thus eligible to participate in the proposed settlement of the case  captioned *Bannerman. et al., vs. Air-Sea Packing Group Inc., et al.*, 1:18-cv-06146 (U.S. District Court for the Southern District of New York) (the "Lawsuit").

PLEASE READ THIS NOTICE CAREFULLY. It contains important information about your rights and options concerning the settlement of the Lawsuit.

- The settlement will create a fund to pay certain current and former Drivers, Leads, and/or Helpers who performed RLC delivery work during the Class Period that started at the RLC Warehouse located on 35th Street in Long Island City or that involved driving to or from, or performing work at an RLC facility (other than the RLC Warehouse) or an RLC customer location in the Tri-State area (the "Class") for alleged "off-the-clock" work allegedly performed during unpaid meal breaks. Before any payments are made to the individuals who do not "opt-out" of this proposed class action settlement, court-approved fees and costs for lawyers for the Class will come out of this fund, as will payments to the individuals who participated in this lawsuit by attending the mediation, and payments to the Claims Administrator.

- This settlement resolves a lawsuit in the Southern District of New York alleging that Defendants failed to pay certain employees for all hours worked and/or overtime compensation; it avoids the costs and risks to you that are associated with continuing the lawsuit; it pays money to current and/or former Drivers, Leads and/or Helpers like you; and it releases Air-Sea and Ralph Lauren from liability.

- The Lead Plaintiffs and Plaintiffs' Counsel contend that RLC was one of your employers. Air-Sea and Ralph Lauren dispute that contention and other allegations in the Lawsuit, and the parties to the Lawsuit disagree as to which party would have won if the case had proceeded to trial.

- Your legal rights are affected by whether or not you chose to act per the terms of this Notice.

- According to Air-Sea's records you worked as a Driver, Lead and/or Helper from: [DATES OF EMPLOYMENT].  Please read this notice carefully to understand <u>all</u> of your rights  and

1

options.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| | |
| **OBJECT** | If you object to the settlement terms, you must write to the Court about why you don't like the settlement (see below). The Court will consider your objections and may decide to address them at the Fairness Hearing on [DATE]. |
| **EXCLUDE YOURSELF** | If you exclude yourself from the settlement, otherwise referred to as "opting-out," you will not receive a payment for the proportionate share of the settlement fund, and you may not object to the settlement. You will retain your right to bring or join any other lawsuit against Air-Sea and/Ralph Lauren concerning legal claims related to overtime wages and unpaid wages for the period July 6, 2012 to            , 2019. |
| **DO NOTHING** | You remain part of the class and receive your proportionate share of the settlement fund. By endorsing the check that you receive in the mail and presenting it for payment, you will become a party plaintiff in the settlement, and waive claims under the Fair Labor Standards Act for the period July 6, 2015 to         , 2019. |

## CRITICAL DATES

[DATE]:        The last date to mail an Opt-Out Form, set forth in Section 14 below.

[DATE]:        The last date to mail any written objections to the Settlement.

[DATE]:        The date of the Court hearing to determine whether the proposed settlement is fair, reasonable and adequate and should be approved by the Court.

## WHAT THIS NOTICE CONTAINS

| | |
|---|---|
| BASIC INFORMATION .................................................................................................... | PAGE 3 |
| 1.  Why did I get this notice?<br>2.  What is this case about?<br>3.  Why is this a class action?<br>4.  Why is there a settlement?<br>5.  How do I know if I am part of the settlement? | |
| THE SETTLEMENT BENEFITS-WHAT YOU GET ......................................................... | PAGE 5 |
| 6.  What does the settlement provide?<br>7.  How much will my payment be?<br>8.  Tax treatment of settlement | |

| HOW TO GET A PAYMENT AND EFFECT OF PAYMENT............................................. <br><br> 9.  How can I get a payment? <br> 10.  When would I get my payment? <br> 11.  What am I giving up by staying in the class and getting a payment? | PAGE 6 |
|---|---|
| THE LAWYERS REPRESENTING YOU  .............................................................. <br><br> 12.  Do I have a lawyer in this case? <br> 13.  How will the lawyers be paid? | PAGE 7 |
| EXCLUDING YOURSELF FROM THE SETTLEMENT.................................................... <br><br> 14.  How do I get out of the settlement? <br> 15.  If I don't exclude myself, can I sue Air-Sea and/or Ralph Lauren later? <br> 16.  If I exclude myself, can I get money from this settlement? | PAGE 7 |
| OBJECTING TO THE SETTLEMENT...................................................................... <br><br> 17.  How do I tell the Court that I don't like the settlement? <br> 18.  What's the difference between objecting and excluding? | PAGE 8 |
| THE COURT'S FAIRNESS HEARING................................................................... <br><br> 19.  When and where will the Court decide whether to approve the settlement? <br> 20.  Do I have to come to the hearing? <br> 21.  May I speak at the hearing? | PAGE 10 |
| IF YOU DO NOTHING..................................................................................... <br><br> 22. What happens if I do nothing at all? | PAGE 10 |
| HOW CAN I GET MORE INFORMATION? ...................................................... | PAGE 10 |

---

## BASIC INFORMATION

### 1. Why did I get this notice?

Air-Sea's records show that you currently work, or previously worked, for Air-Sea as a Driver, Lead, and/or Helper who performed RLC delivery work starting at the RLC Warehouse located on 35th Street in Long Island City, or who performed certain other RLC delivery work in the Tri-State area at some point between July 6, 2012 and , 2019.

You are receiving this notice because you have the right to know about a proposed settlement of a class action lawsuit, and about all of your options, before the Court decides whether to approve the settlement. You have the ability to participate in the settlement, or you may decline to do so.

This notice explains the process required for informing the attorneys and the Court of your decision. The notice also explains the process the Court has put in place for deciding whether to

3

approve the settlement, and for administering the settlement if it is approved.

The Court in charge of this case is the United States District Court for the Southern District of New York, and the case is known as *Bannerman. et al., vs. Air-Sea Packing Group Inc., et al.*, 1:18-cv-06146. The people who initiated the suit are called Plaintiffs, and the companies they sued, namely Air-Sea Packing Group Inc. and Ralph Lauren Corporation, are called Defendants.

## 2. What is this case about?

Air-Sea employees filed a lawsuit alleging that Air-Sea and Ralph Lauren failed to record and pay Drivers, Leads, and Helpers for time spent working off-the-clock during unpaid meal breaks and failed to provide accurate wage statements.

Air-Sea and Ralph Lauren do not discourage your participation in the settlement, and the law strictly prohibits Air-Sea and Ralph Lauren from retaliating against you for participating in the settlement.

## 3. Why is this a class action?

In a class action, one or more people - the Plaintiffs - sued on behalf of people who have similar claims. All these people are Class or Collective Members. One court resolves the issues for all Class Members, except for those who choose to exclude themselves from the Class by filing an Opt-Out Form (see below).

## 4. Why is there a settlement?

The Court did not decide in favor of the Plaintiffs or the Defendants. Instead, both sides agreed to a settlement before trial. That way, both sides avoid the cost of a trial, and the people affected will get compensation. The Class Representatives and the attorneys (i.e., "Class Counsel" as described in Section 12 below) think the settlement is the best outcome for all Class Members. Both sides agreed to the settlement to resolve the case, and avoid further disputes, inconvenience, and expense. By agreeing to settle the case, Air-Sea and Ralph Lauren do not admit any liability, culpability, negligence, or wrongdoing.

## 5. How do I know if I am part of the settlement?

The Court decided that every individual who fits into the following category is a Class Member:

- Individuals who are or were employed by Air-Sea as a Driver, Lead, and/or Helper who performed RLC delivery work starting at the RLC Warehouse located on 35th Street in Long Island City, or who performed certain other RLC delivery work in the Tri-State area between July 6, 2012 and , 2019.

4

| THE SETTLEMENT BENEFITS—WHAT YOU GET |
|---|

**6. What does the settlement provide?**

Air-Sea has agreed to pay no more than five hundred forty-eight thousand four hundred dollars ($548,400.00) to settle this Lawsuit (plus standard employer-side tax obligations, including the Employer Federal Insurance Contributions Act (FICA) amount, arising out of payments to the Class Members). Before the Class Members who choose to participate in the settlement ("Participating Class Members") are paid, however, the following amounts may be removed from the settlement fund:

- <u>Attorneys' Fees and Costs</u>:   The attorneys for the Class Members will ask the Court to grant them $182,798.17 from the settlement fund to pay for their fees in this action. The attorneys for the Class Members will also ask the Court to grant them the actual costs expended on behalf of the class which shall not exceed $3,841.45.

- <u>Class Representative Payments</u>:  The Class Representatives will seek special payments for their service in bringing this lawsuit on behalf of the Class Members. The total amount in service payments they seek is $20,000, to be distributed among the Class Representatives as follows: $10,000.00 to Tyrone Bannerman; and $10,000.00 to Jean Alvarez. The Class Representatives receive these special payments because of their involvement in the Lawsuit, particularly the time they each spent sitting for depositions and/or attending the mediation sessions.

- <u>Claims Administrator Fees and Costs.</u> The fees and costs of the Claims Administrator, in the estimated amount of $8,000 will be paid from the settlement fund.

The amount remaining in the settlement fund after these payments are made is the "Net Settlement Fund."

**7.   How much will my payment be?**

If you decide to participate in the settlement, it is estimated that your share of the settlement fund will be: $____ This represents your total share of the settlement fund, which includes a share for claims under the Fair Labor Standards Act ("FLSA"), if any, as well as your claims under the New York Labor Law. <u>To participate in settlement you do not need to do anything.</u>

Your share of the settlement fund was calculated based on the number of Qualified Workdays (a day an employee worked 4 or more hours for Air-Sea as a Driver, Lead, or Helper performing RLC delivery work starting at the RLC Warehouse located on 35th Street in Long Island City, or performing certain other RLC delivery work in the Tri-State area) you worked in the period July 6, 2012 through , 2019. Specifically, your share is the result of multiplying the Net Settlement Fund by the percentage calculated as the number of Qualified Workdays you worked in the Class Period divided by the total number of Qualified Workdays worked by all Participating Class Members in the Class Period.

The calculation of the number of Qualifying Days you worked is based on Air-Sea business records. In calculating your share of the settlement fund, any partial days that you worked four (4)

or more hours were treated as full days. A day was only included in the calculation if you received pay for actual work you performed during that day. This means that any days for which you did not perform work, but were paid due to vacation, sick pay, FMLA, or other similar reasons, would not be included in calculating your portion of the Net Settlement Fund.

If you would like to dispute the number of days that you worked, you should contact the Claims Administrator at - - . In a dispute as to how many days you worked Air-Sea's business records will be presumed to be correct, but the Parties will evaluate any information and evidence you submit to the Claims Administrator and then reach a final decision.

| **8. Tax treatment of settlement** |
|---|

If you choose to participate in the settlement, 50% of the payment made to you will be (a) deemed taxable, wage income reported on an IRS Form W-2, and (b) subject to ordinary payroll tax and income tax withholdings; and 50% of the payments made to you from the Settlement Fund shall be treated as non-wage income and reported on an IRS Form 1099.

| **HOW TO GET A PAYMENT** |
|---|

| **9. How can I get a payment?** |
|---|

To qualify for payment of your share of the Net Settlement Fund, <u>you do not need to do anything</u>. You will receive a check in the mail after the court approves the settlement.

| **10. When would I get my payment?** |
|---|

The Court will hold a hearing on [DATE] to decide whether to approve the settlement.  If the Court approves the settlement after that hearing, there may still be appeals.  It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year.  Everyone who participates in the settlement will be informed of the progress of the settlement. Please be patient.

| **11. What am I giving up by staying in the class and getting a payment?** |
|---|

If you worked for Air-Sea as a Driver, Lead, and/or Helper who performed RLC delivery work starting at the RLC Warehouse located on 35th Street in Long Island City, or who performed certain other RLC delivery work in the Tri-State area, at some point between July 6, 2012 and , 2019, and you do not exclude yourself from this settlement by submitting an Opt-Out Form pursuant to Section 14 below, and the Court grants final approval of the settlement, you will release Air-Sea and Ralph Lauren, plus all of their respective past, present and future parents, subsidiaries, affiliates, predecessors, successors, directors, officers, members, employees, and anyone else acting for any of them (the "Released Parties") from liability for all claims under the New York Labor Law and any other applicable state or local wage and hour law, whether know or unknown, between July 6, 2012 and , 2019.

If you have not previously filed a consent to join the Lawsuit with the Court, and you receive and cash your settlement check, you will release all claims under the federal Fair Labor Standards Act ("FLSA") between July 6, 2012 and , 2019 that you may have against Air-Sea and Ralph Lauren for unpaid wages and/or overtime based on your employment with Air-Sea, and any claims under federal law that arise from or are related to the facts alleged in the lawsuit and/or your employment with Air-Sea. You  will  not  release any FLSA claims if you do not cash your settlement check.

In addition to waiving and releasing the claims covered above by participating in the Lawsuit you agree never to sue any of the Released Parties in any forum for claims, laws, or theories covered by the Release and agree that any such claim, if filed, shall be immediately dismissed with prejudice upon request by the Released Party(ies). This covenant not to sue is limited only to Released claims (i.e. claims arising under the FLSA, the New York Labor Law, and any other applicable federal, state, or local wage and hour law) between July 6, 2012 and    , 2019.

---

### THE LAWYERS REPRESENTING YOU

#### 12. Do I have a lawyer in this case?

If you choose to stay in the class, the Court has decided that the Law Office of Christopher Q. Davis is qualified to represent you and all other Class Members. These attorneys are called "Class Counsel." You do not need to hire your own attorney because Class Counsel is working on your behalf. You will not be charged for these lawyers. However, if you want to be represented by your own lawyer, you may hire one at your own expense.

If you have questions or desire additional details, you may call, email or correspond with Class Counsel.  Class Counsel's contact information is:

The Law Office of Christopher Q. Davis, PLLC
80 Broad Street, Suite 703
New York, NY 10004
646-430-7930
paralegal@workingsolutionsnyc.com

#### 13. How will the lawyers be paid?

Class Counsel will ask the Court to approve payment of up to $182,798.17, plus the actual costs expended in litigating this matter, not to exceed $3,841.45., to them from the settlement fund for attorneys' fees and expenses. The fees would pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. Air-Sea and Ralph Lauren have agreed not to oppose Class Counsel's request for these fees and expense reimbursement, but the Court may award less than this amount.

---

### EXCLUDING YOURSELF FROM THE SETTLEMENT

     If you don't want a payment from this settlement, and you want to keep the right to sue Air-Sea and/or Ralph Lauren or continue with a pending lawsuit you already initiated against Air-Sea and/or Ralph Lauren regarding claims for unpaid wages and overtime under New York law for acts that occurred between July 6, 2012 and , 2019, then you must take steps to get out. This is called excluding yourself or opting out of the settlement class.

### 14. How do I get out of the settlement?

If you do not wish to be bound by the settlement and do not wish to receive a settlement payment, you must mail the enclosed Opt-Out Form, postmarked no later than the applicable Notice Response Deadline, to the Claims Administrator by first-class mail. You must include your name, address, and telephone number in the letter, and sign and date it. You should send the letter to:



_____SETTLEMENT
RG/2 Claims Administration LLC
_____
_____

If you ask to be excluded from the settlement, you will not get any payment for your portion of the settlement, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue Air-Sea and/or Ralph Lauren for claims described in the release in the future.

### 15. If I don't exclude myself, can I sue Air-Sea and/or Ralph Lauren later?

Unless you exclude yourself, you give up any right to sue Air-Sea and/or Ralph Lauren for claims under the New York Labor Law and any other applicable state or local wage and hour law for the period of July 6, 2012 through , 2019. If you have a pending lawsuit against Air-Sea and/or Ralph Lauren covering these matters, speak to your lawyer in that case immediately. You must exclude yourself from this Class to continue your own lawsuit. Remember, the exclusion deadline is [DATE]. To exclude yourself from the state law claims, you must affirmatively submit the Opt-Out Form (described above).

### 16. If I exclude myself, can I get money from this settlement?

No. You will not receive any money if you exclude yourself from this settlement. If you do not exclude yourself (as explained in Paragraph 14 above), you will remain in the Class. That means that you cannot sue, continue to sue, or be a party in any other lawsuit against the Defendants pertaining to any released claims. It also means that all of the Court's orders will apply to you and legally bind you.

## OBJECTING TO THE SETTLEMENT

If you choose to stay in the class, you can tell the Court that you don't agree with the settlement or some part of it. This is called objecting to the settlement. The Court will consider your views.

### 17.  How do I tell the Court that I don't like the settlement?

To object, you must submit a letter to the Claims Administrator via First-Class United States Mail and it must be received by the Claims Administrator no later than the applicable Notice Response Deadline. The written objection must be signed and must include the words, "I object to the Settlement proposed in the *Bannerman v. Air-Sea* litigation as it relates to my rights under the Agreement," as well as all of the reasons for the objection. Any reasons not included in the written objection shall not be considered. Please note that you can only object to the terms of the settlement if you do not opt out of the settlement and file an objection by the required date. However, if the Court rejects your objection, you will still be bound by the terms of the settlement. The letter must include your name (and former names, if any), address, telephone number, and signature. You may withdraw your objection at any time.

The Court will hold a hearing, called a fairness hearing, to decide whether to approve the settlement. More information about this hearing can be found below, in Sections 19-21 of this notice. If you wish to appear at the fairness hearing, you should also state in your letter objecting to the settlement: "I intend to appear at the Fairness Hearing." Your letter must be postmarked no later than [DATE]. You should send the letter to:



SETTLEMENT
RG/2 Claims Administration LLC

If you do not comply with the procedures and deadlines described in this notice for submitting written comments objecting to the settlement or appearing at the fairness hearing, you will not be entitled to be heard at the hearing, or to contest or appeal any approval of the settlement or any award of attorneys' fees or expenses, or to contest or appeal from any other orders or judgments of the Court entered in connection with the settlement. The Parties may file with the Court written responses to any filed objections.

### 18.    What's the difference between objecting and excluding?

Objecting is simply telling the Court that you do not like something about the settlement. You can only object if you participate in the settlement. You cannot object to the settlement and exclude yourself from the settlement by submitting an Opt-Out Statement.

Excluding yourself is telling the Court that you don't want to be part of the class. If you exclude yourself, you have no basis to object because the case no longer affects you.

---
**THE COURT'S FAIRNESS HEARING**

---

The Court will hold a fairness hearing on [DATE] to decide whether to approve the settlement. You may attend and, if you submitted a proper and timely objection, you may ask to speak, but you do not have to. You may not speak at the hearing if you have excluded yourself from the class.

| 19. When and where will the Court decide whether to approve the settlement? |
|---|

The Court will hold a fairness hearing before Judge ____ on [DATE] in Courtroom ____ at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, NY 10007. The purpose of this hearing will be for the Court to determine whether the settlement is fair, adequate, reasonable and should be approved by the Court. The Court will take into account any comments or objections that have been filed in accordance with the procedures described above.

| 20. Do I have to come to the hearing? |
|---|

No. Class Counsel will answer questions that Judge may have. However, you are welcome to come at your own expense. If you sent an objection to the settlement, you don't have to come to Court to talk about it. As long as you mailed in your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but that is not necessary.

| 21. May I speak at the hearing? |
|---|

If you would like to speak at the hearing, you should follow the process described at Section 17 of this notice. You cannot speak at the hearing if you excluded yourself from the class or did not submit an objection.

---
**IF YOU DO NOTHING**

---

| 22. What happens if I do nothing at all? |
|---|

If you do nothing, you will get money under the settlement representing your share of the Net Settlement Fund.

---
**HOW CAN I GET MORE INFORMATION?**

---

This notice does not contain all of the terms of the proposed settlement. More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement by

contacting Class Counsel. If you have any other questions or desire additional details, you may also contact Class Counsel.  Class Counsel's contact information is:

The Law Office of Christopher Q. Davis, PLLC
80 Broad Street, Suite 703
New York, NY 10004
 646-430-7930
paralegal@workingsolutionsnyc.com

**EXHIBIT 3**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x

TYRONE BANNERMAN, individually and on
behalf of all others similarly situated,

                           Plaintiffs,

          -against-

AIR-SEA PACKING GROUP INC. and RALPH
LAUREN CORP.,

                     Defendants.

Case No.: 1:18-cv-06146

----------------------------------------------------------------

**[PROPOSED] ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT, SCHEDULING OF A
FINAL APPROVAL HEARING, AND RELATED RELIEF**

      The Plaintiff's uncontested motion for an order preliminarily approving a class action

settlement and setting a settlement hearing, came on for hearing on _____, 2019.  The

Court has considered the Settlement Agreement (and its exhibits), the submissions of counsel,

and all other papers filed in this action.  The matter having been submitted and good cause

appearing therefore:

The Court finds as follows:

**I.     Background.**

      1.      All defined terms contained herein shall have the same meanings as set forth in

the Settlement Agreement executed by the Parties and filed with this Court (the "Settlement" or

"Settlement Agreement").

      2.      The Lead Plaintiff and Air-Sea Packing Group Inc. ("Air-Sea") and Ralph Lauren

Corporation ("Ralph Lauren") (collectively "Defendants") by and through their Counsel, have

1

reached an agreement to settle all released claims and resolve the above-captioned Litigation (the "Litigation" or "Lawsuit"), which is currently pending before this Court.

3.      The Lead Plaintiff alleges that Defendants purportedly violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for reasons set forth in the Complaint.

## II.      Preliminary Settlement Approval.

4.      Based upon the Court's review of Plaintiff's Memorandum of Law in Support of Plaintiff's Unopposed Motion for Preliminary Approval of the Class Settlement; the Declaration of Christopher Q. Davis ("Davis Declaration"); and all corresponding exhibits and papers submitted in connection with the Motion, the Court grants preliminary approval of the Settlement Agreement made and entered into on _____, **2019** , by and between the Named Plaintiff, individually and on behalf of the class members, as defined below, and Defendants.

5.      For purposes of settlement only, there shall be one state law class, defined as follows:

   a.   all present and former persons employed as Drivers, Leads, or Helpers by Air-Sea who performed delivery work for Ralph Lauren that started at the Ralph Lauren Warehouse located on 35th Street in Long Island City or that involved driving to or from, or performing work at, a Ralph Lauren facility (other than the Ralph Lauren Warehouse) or a Ralph Lauren customer location in the Tri-State area at any time in the period from July 6, 2012 to the date of the Court's Preliminary Order, or 60 calendar days from filing of this Motion, whichever is shorter.

All individuals encompassed within the above definition are eligible to participate in this Settlement.

6.      The Parties agreed to settle this case for a Total Settlement Amount of up to five hundred forty-eight thousand and four hundred dollars ($548,400.00).  The "Net Settlement Amount" means the remainder of the Total Settlement Amount after deductions for: (1) Court-approved attorneys' fees for Class

Counsel of one hundred eighty-two thousand, seven hundred and ninety-eight dollars and seventeen cents ($182,798.17) and actual costs not to exceed three thousand eight hundred and forty-one dollars and forty-five cents ($3,841.45); (2) Court-approved Service Payments of twenty thousand dollars ($20,000.00) for Lead Plaintiffs in the amount of ten thousand dollars ($10,000.00) each, and (3) Claims Administrator Fees and Costs in the amount of eight thousand dollars ($8,000.00).

7.      Claimants, as defined in the Settlement Agreement, shall receive a Settlement Check from the Net Settlement Amount based on his/her Pro Rata Share as determined by the number of Qualified Workdays worked by them during the Class Period.

8.      A Claimant's Settlement Distribution Check shall be determined by the formula set forth in the Settlement Agreement. Any amount of the Net Settlement Amount that is not paid to Claimants (whether because of delivery failures, failures by Claimants to timely and properly present Settlement Checks for payment, or otherwise) shall be refunded to Air-Sea.

9.      The approval of a proposed class action settlement is a matter of discretion for the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).  In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

10.     The Court concludes that the Settlement Agreement is within the range of possible final settlement approval, such that preliminary approval and subsequent notice to the class is appropriate. *See Diaz v. Eastern Locating Serv., Inc*., No. 10 Civ. 4082, 2010 WL 2945556, at *1 (S.D.N.Y. July 22, 2010); *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980).

11.     The Court finds that the proposed settlement is the result of extensive, arm's-length negotiations by counsel well-versed in the prosecution and defense of wage-and-hour class action lawsuits.

## III.    Conditional Certification of the Proposed Rule 23 Class.

12.     For purposes of settlement only, the Court provisionally certifies the class pursuant to Federal Rule of Civil Procedure ("FRCP") 23.  The Lead Plaintiff and Class Members who do nothing (*i.e.,* do not exclude themselves from the Settlement), will be deemed "Claimants."

13.     Defendants have agreed not to contest, for purposes of settlement only, that the requirements of FRCP 23(a) and (b)(3) are met.  On that basis, the Court conditionally finds that, for the purposes of approving this settlement only and for no other purpose and with no other effect on the Litigation, including no effect on the Litigation should the Settlement Agreement not ultimately be approved or should the Final Effective Date not occur (and recognizing the Named Plaintiff has waived the right to claim any such effect and are estopped from doing so):

   a.  The class here satisfies Rule 23(a) numerosity.

   b.  For purposes of settlement only, the Court finds that there is an ascertainable Rule 23 Class.

   c.  For purposes of settlement only, the Court finds that common questions of law and fact exist.

   d.  The common questions are similar to those in other cases in which courts in this District granted class certification for settlement purposes.

   e.  For purposes of settlement only, the Court finds that Named Plaintiff's claims are typical of the claims of the Class Members and that because Plaintiff's wage and hour claims arise from the same factual and legal circumstances that form the basis of Class Members' claims, Plaintiff satisfies the typicality requirement.  *See, e.g., Perez v. Isabella Geriatric Center, Inc*., 2016 WL 5719802, at *2 (S.D.N.Y. 2016) (finding that similar questions satisfied commonality in a Rule 23 wage action); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 463 (S.D.N.Y. 2008)

4

(certifying NYLL class where plaintiffs used the same clock-in/clock-out system and were denied overtime wages, and where plaintiffs would be able to adduce generalized proof related to company-wide practices).

f. For purposes of settlement only, the Court finds that, with respect to the adequacy of Named Plaintiff, there is no evidence or indicia that he has interests that are antagonistic to or at odds with the Class Members.

g. Christopher Q. Davis, Esq., and Mariyam Hussain, Esq. of The Law Office of Christopher Q. Davis, PLLC, shall be deemed "Class Counsel" and have and will fairly and adequately protect the interests of the Class Members.  The Davis Declaration supports the conclusion that counsel is qualified and the requirements of 23(a)(4) are met.  Among other things, Plaintiff's counsel has previously been appointed as Class Counsel and as co-Class Counsel in other matters.

h. For purposes of settlement only, the Court finds that the prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications which would establish incompatible standards of conduct.

i. Consistent with Rule 23(b)(3) and for purposes of settlement only, the Court finds that questions of law and fact common to all Class Members predominate over questions affecting only individual Class Members and a class action is superior to other available means for the fair and efficient adjudication of the controversy.

j. The assistance of an experienced mediator, Dina Jansenson, reinforces the Court's finding that the proposed settlement is non-collusive.

## IV.     Provisional Approval of FLSA Settlement.

14.     As mentioned above, the Settlement was the product of adversarial litigation, extensive exchange of discovery, and arms'-length negotiations by counsel experienced in the prosecution of wage and hour class and collective actions. The Court also provisionally approves the FLSA settlement solely for purposes of effectuating the Settlement and will further evaluate when the Plaintiff files his motion for final approval of the settlement.

## V.      Supplemental Jurisdiction Exists Over Plaintiff's and the Class Members' State Law Claims, and Claimants Will Release State Law Claims and FLSA Claims.

15.     The Court may properly oversee a release by Claimants of FLSA and state wage and hour claims.  *See Damassia v. Duane Reade Inc.*, 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("It

is true that potential class members who do not opt out of the class action could have all claims that could have been brought in that action, including any FLSA claim, resolved by res judicata without opting in to the FLSA action…[h]owever, as in any Rule 23(b)(3) class action, potential class members who want to control their own litigation, and to avoid being bound by the judgment in the class action, are free to opt out of the class.") (internal quotations omitted).

16.     For purposes of settlement only, the Court exercises supplemental jurisdiction over Lead Plaintiffs' and the Class Members' New York Labor Law claims and approves the release of such claims, together with FLSA claims, in the manner described in the Settlement Agreement.

**VI.     Appointment of Plaintiff's Counsel as Class Counsel.**

17.     The Court appoints Christopher Q. Davis, Esq. and Mariyam Hussain, Esq. of the Law Office of Christopher Q. Davis, PLLC, as Class Counsel because they meet all of the requirements of Fed. R. Civ. P. 23(g).

18.     Class Counsel did substantial work identifying, investigating, prosecuting, and settling the FLSA and the Rule 23 claims in this action.

19.     Class Counsel has substantial experience prosecuting and settling employment class actions, including wage-and-hour class actions, and is well-versed in class action and wage-and-hour law.

20.     Other courts have found Class Counsel to be adequate class counsel in employment law class actions.

21.     The work that Class Counsel has performed in litigating and settling this case demonstrates his commitment to the class and to representing the class' interests.

**VII.     Class Notice and Settlement Procedure.**

22.    The Court approves the Notice of Proposed Settlement of Class Action and

Collective Action Lawsuit and Fairness Hearing (the "Notices") and directs their distribution to

all Class Members.

23.    The content of the proposed Notices fully complies with due process and Fed. R.

Civ. P. 23, including the requirements of Fed. R. Civ. P. 23(c)(2)(B).

24.    For purposes of settlement only, the Court finds that the proposed Notice satisfies

the requirements of the FLSA.  Section 216(b) of the FLSA states in relevant part that:

> (a)n action…may be maintained…in any Federal or State
> court of competent jurisdiction by any one or more
> employees for an on behalf of himself or themselves and
> other employees similarly situated.  No employee shall be a
> participating plaintiff to any such action unless he gives his
> consent in writing to become such a party and such consent
> is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

25.    The Court hereby adopts the following settlement approval process:

a.    Within ten (10) business days following the Court's entry of the Preliminary
Approval Order, Air-Sea shall provide the Claims Administrator with a class
contact list, in electronic form, that includes all the information set forth in the
Settlement Agreement.

b.    Within ten (10) business days following its receipt of information from Air-Sea,
the Claims Administrator will e-mail and mail to Class Members, via First Class
United States Mail, postage prepaid, the Court-approved Notices.

c.    On or before the applicable Opt-Out Period, as defined in Sections 1.18 and 2.6.2.B
of the Settlement Agreement, a Class Member's Opt-Out Statement must be
completed and postmarked, or a Claimant's Objection must be completed and
postmarked.

d.    The Claims Administrator will stamp the receipt date on the original of each Opt-
Out Statement and Objection that it receives and shall send copies to Counsel by
the first Friday after receipt.  The Claims Administrator shall then send to Counsel
a final list of all Opt-Out Statements no later than one (1) business day after the
expiration of the applicable Opt-Out Period.

e.  A final approval hearing will be held as soon thereafter as is convenient for the Court.

f.  Fifteen (15) calendar days prior to the final fairness hearing, the parties will submit a Joint Motion for Judgment and Final Approval of the Settlement, together with Plaintiff's motion seeking the payment of attorneys' fees, costs, and the Service Award.

g.  If the Court grants the Motion for Final Approval of the Settlement, the Court will issue a Final Order and Judgment for Dismissal.

h.  Each Participating Class Member will have ninety (90) calendar days from the date on which the Settlement Checks are mailed to negotiate his or her settlement check(s).

i.  The "Final Effective Date" shall be thirty five (35) days after the Court has entered a Final Order approving this Agreement, and the time to appeal from the Final Order has expired and no notice of appeal has been filed or, if a notice of appeal is filed, the latest of the following, if applicable, has occurred: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form substantially identical to the form of the Final Order entered by the Court.

j.  No more than ten (10) business days after the Final Effective Date, Defendants shall transfer the Total Settlement Amount to the Qualified Settlement Fund.

k.  No more than twenty one (21) calendar days after the Final Effective Date, the Claims Administrator shall mail Settlement Checks to the Claimant, mail the attorneys' fees and costs to Class Counsel, and mail the Service Awards to Lead Plaintiffs.

26.  The Court preliminarily approves the settlement and finds that it was reached as a result of vigorously contested litigation to resolve bona fide disputes.  *See Lynn's Food Stores, Inc.*, 679 F.2d at 1353 n.8.

27.     Should this Order fail to detail any term relevant to the parties' settlement or if any term herein conflicts with the parties' Settlement Agreement, the terms of the Settlement Agreement shall control.

**SO ORDERED**:


_____
Hon. Judge Paul G. Gardephe

Date:_____