**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| |
|---|
| TYRONE BANNERMAN, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>    -against-<br><br>AIR-SEA PACKING GROUP INC. and RALPH LAUREN CORP.,<br><br>        Defendants. |

Case No. 1:18-cv-06146

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND APPROVAL
OF THE FLSA SETTLEMENT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

I.   LITIGATION HISTORY ..............................................................................................2

     A.  Factual and Procedural History ........................................................................2

     B.  Overview of Investigation and Discovery ........................................................4

     C.  Settlement Negotiations....................................................................................5

     D.  The Plaintiffs' Unopposed Motion for Preliminary Approval ...........................8

     E.  Summary of the Notice and Claims Administration Process ................................8

II.  OVERVIEW OF THE SETTLEMENT TERMS ....................................................10

     A.  The Settlement Fund .......................................................................................10

     B.  Releases ..........................................................................................................10

     C.  Allocation Formula..........................................................................................11

     D.  Attorneys' Fees and Litigation Costs ............................................................13

     E.  Service Payments.............................................................................................13

III. PLAINTIFFS SUBMIT THAT THE RULE 23 SETTLEMENT CLASS MEETS THE
     LEGAL STANDARD FOR CLASS CERTIFICATION .......................................14

     A.  Numerosity ......................................................................................................15

     B.  Commonality ...................................................................................................15

     C.  Typicality.........................................................................................................16

     D.  Adequacy of the Named Plaintiffs and Class Counsel ...................................17

     E.  Certification is Proper Under Rule 23(b)(3) ...................................................18

         1.  *Common Questions Predominate* ......................................................19

         2.  *A Class Action is a Superior Mechanis*m ..........................................19

IV. FINAL APPROVAL IS APPROPRIATE PURSUANT TO RULE 23(e) BECAUSE THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE..........................................20

    A. The Proposed Settement is Procedurally Fair....................................................21

    B. The Proposed Settlement is Substantively Fair .................................................22

        1. *Litigation Through Trial Would be Complex, Costly, and Long (Grinnell Factor 1)* .............................................................................................23

        2. *The Reaction of the Class Has Been Positive (Grinnell Factor 2)* ...........................24

        3. *Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3)* .............................................................................24

        4. *Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5)* ..................................................................................25

        5. *Establishing a Class and Maintaining it Through Trial Would Not Be Simple (Grinnell Factor 6)* ................................................................................................27

        6. *Defendant's Ability to Withstand a Greater Judgment is Not Clear (Grinnell Factor 7)* ................................................................................................29

        7. *The Settlement Funds are Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9)* ................29

V. THE COURT SHOULD APPROVE THE FLSA SETTLEMENT .........................................30

CONCLUSION ..............................................................................................................32

TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Aguilera v. Waukesha Memorial Hosp., Inc.*,
13-cv-1245, 2015 WL 3791469, at *4-6 (E.D.Wis., June 18, 2015) ...........................28

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591, 617, 623 (1997) ...............................................................18, 19, 20

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164, 174, 176, 177, 178 (S.D.N.Y. 2000),
*aff'd sub. nom. D'Amato*, 236 F.3d 78 ..........................................................passim

*Camilotes v. Resurrection Health Care Corp.*,
286 F.R.D. 339, 346–52 (N.D. Ill. 2012) ...................................................28

*Cheeks v. Freeport Pancake House, Inc.*,
796 F.3d 199, 206 (2d Cir. 2015) ...............................................................31, 32

*Clark v. Ecolab Inc.*, 07-cv-8623-PAC,
07 Civ. 8623, 2009 WL 6615729, at *5 (S.D.N.Y. Nov. 27, 2009) ...........................18

*City of Detroit v. Grinnell Corp.*,
495 F.2d 463, 448 (2d Cir. 1974) ..............................................................passim

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013)..............................................................................27

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473, 483 (2d Cir. 1995) ...............................................................15

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91, 108 (2d Cir. 2007) ...............................................................19

*Damassia v. Duane Reade*,
250 F.R.D. 152, 164 (S.D.N.Y. 2008) .......................................................20

*Damassia v. Duane Reade, Inc.*,
04 Civ. 8819, No. 06 Civ. 2295, 2009 WL 5841128, at *4 (S.D.N.Y. July 27, 2009) ...............13

*D'Amato v. Deutsche Bank*,
236 F.3d 78, 85 (2d Cir. 2001) ...............................................................20, 21

*Denney v. Deutsche Bank AG*,
443 F.3d 253, 268 (2d Cir. 2006) .............................................................18

*Desilva v. N. Shore Long Island Jewish Health Sys., Inc.*,
27 F.Supp.3d 313, 321 (E.D.N.Y.2014) ...............................................................27, 28

*Diaz v. Eastern Locating Service Inc.*,
10-cv-4082, 2010 WL 2945556, at *2 (S.D.N.Y. July 22, 2010) ...............................18

*Dziennik v. Sealift, Inc.*,
05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) ...........................18

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
05 Civ. 10240, 2007 WL 2230177, at *4  (S.D.N.Y. July 27, 2007) .........................21

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174, 182, 186 (W.D.N.Y. 2005) ......................................................passim

*Gen. Tel. Co. of Southwest v. Falcon*,
457 U.S. 147, 157 n.13 (1982) ...................................................................................15

*Grant v. Bethlehem Steel Corp.*,
823 F.2d 20, 23 (2d Cir. 1987) ...................................................................................24

*Green v. Wolf Corp.*,
406 F.2d 291, 301 (2d Cir. 1968) ...............................................................................20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011, 1019 (9th Cir. 1998) ..........................................................................15

*Jacob v. Duane Reade, Inc.*,
289 F.R.D. 408, 414 (S.D.N.Y. 2013), *on reconsideration in part on other grounds*, 293 F.R.D.
578 (S.D.N.Y. 2013)....................................................................................................17

*Joel A. v. Giuliani*,
218 F.3d 132, 138-39 (2d Cir. 2000) ..........................................................................30

*Johnson v. Brennan*,
10 Civ. 4712 CM, 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011) ....................30

*Khait v. Whirlpool Corp.*,
06 Civ. 6381, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) ...........................21

*Lassen v. Hoyt Livery Inc.*,
3:13-cv-1529, 2014 WL 4638860, at *9 (D. Ct., Sep. 17, 2014) ...............................16

*Le v. SITA Info. Networking Computing USA, Inc.*,
2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) .....................................................31

*Lynn's Food Stores, Inc. v. U.S.*,
679 F.2d 1350, 1353 (11th Cir. 1982) ...................................................................31

*Marisol A. v. Giuliani*,
126 F.3d 372, 376 (2nd Cir. 1997) .......................................................................16

*Marriott v. County of Montgomery*,
227 F.R.D. 159, 173 (N.D.N.Y. 2005) .................................................................19

*McKenna v. Champion Intern. Corp.*,
747 F.2d 1211, 1213 (8th Cir.1984) .....................................................................31

*Mendez v. U.S. Nonwovens Corp.*,
314 F.R.D. 30 (E.D.N.Y. 2016) ............................................................................28

*Miller v. ThedaCare Inc.*,
15-cv-506, 2018 WL 472818, at *10 (E.D.Wis., Jan. 18, 2018) ...........................28

*Newman v. Stein*,
464 F.2d 689, 693 (2d Cir. 1972) .........................................................................30

*Noble v. 93 University Place Corp.*,
224 F.R.D. 330, 346 (S.D.N.Y. 2004) ..................................................................18

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815, 846-48 (1999) ................................................................................19

*In re Penthouse Executive Club Compensation Litigation*,
No. 10 Civ. 1145 at *2, 2013 WL 1828598 (S.D.N.Y. April 30, 2013) .................30

*In re Penthouse Executive Club Compensation Litig.*,
2014 WL 185628, at *7 (S.D.N.Y. Jan. 14, 2014) ...............................................31

*Perez v. Allstate Ins. Co.*,
No. 11-cv-1812 (JFB), 2014 WL 4635745, at *3 (E.D.N.Y. Sept., 16, 2014) ...........17

*Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
698 F.2d 150, 153-54 (2d Cir. 1983) ....................................................................15

*Prasker v. Asia Five Eight LLC*,
No. 08 Civ. 5811, 2010 WL 476009, at *4 (S.D.N.Y. Jan. 6, 2010) .....................21

*Reyes v. Altamarea Grp., LLC*,
No. 10 Civ. 6451, 2011 WL 4599822, (S.D.N.Y. Aug. 16, 2011) .........................31

*Robidoux v. Celani*,
987 F.2d 931, 936-37 (2d Cir. 1993) ........................................................................16

*Spicer v. Pier Sixty, LLC*,
269 F.R.D. 321, 337-338 (S.D.N.Y 2010) ................................................................18

*Torres v. Gristede's Corp.*,
No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) ...................19

*Toure v. Central Parking Systems of New York*,
05-cv-5237, 2007 WL 2872455, at *7 (S.D.N.Y. 2007) ............................................17

*U.S. v. City of New York*,
2015 WL 1063403, at *14 (E.D.N.Y. 2015) ..............................................................24

*In re Visa Check/MasterMoney Antitrust Litig*,
280 F.3d 124, 139 (2d Cir. 2001) .............................................................................19

*Wal–Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ..................................................................................................27

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96, 116 (2d Cir.  2005) ...............................................................20, 21, 22

*In re Warfarin Sodium Antitrust Litig*,
391 F.3d 516, 537 (3d Cir. 2004) .............................................................................24

*Wolinsky v. Scholastic, Inc.*,
900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) ..........................................................31, 32

OTHER AUTHORITIES

29 C.F.R. § 782 ........................................................................................................26

49 U.S.C. § 13102 ....................................................................................................26

Federal Rule of Civil Procedure 23 ....................................................................passim

New York City Personal Income Tax on Residents Regulations § 291.1(b) ..............12

New York State Personal Income Tax Regulations § 171.4(b)(1) .............................12

Treas. Reg. § 31.3a02(g)-l(a)(2) ...............................................................................12

## PRELIMINARY STATEMENT

Class Counsel, on behalf of the Participating Class Members (referred to herein as "Plaintiffs" or "Participating Class Members"), respectfully request that this Court grant final approval of the settlement set forth in the Amended Class Action Settlement Agreement (the "Settlement" or "Settlement Agreement"), for which the Court already granted preliminary approval in an Order entered on September 19, 2019. *See* Dkt. No. 51. Specifically, the Participating Class Members without opposition from Defendants Air-Sea Packing Group Inc. ("Air-Sea") and Ralph Lauren Corp. ("Ralph Lauren") (collectively, "Defendants"), respectfully request that the Court enter the proposed Order and Judgment granting final approval of the settlement. (Class Counsel's request for an award of costs and fees is separately submitted, and Defendants do not oppose that request.)

On September 19, 2019, the Court entered an order granting preliminary approval of the proposed class and collective action Settlement in this case, provisionally certified the class, appointed Christopher Q. Davis as Class Counsel, and approved a Notice of Proposed Settlement of Class Action and Collective Action Lawsuit and Fairness Hearing. *See* Dkt. No. 51. Shortly thereafter, the parties submitted to this Court an amended Notice of Proposed Settlement of Class Action and Collective Action Lawsuit and Fairness Hearing (the "Notice"), which addressed an inadvertent typographical error and clarified that "[DATES OF EMPLOYMENT]" on the Notice meant only the date of hire. *See* Dkt. No. 52. After the Court approved the Notice, as amended, (*see* Dkt. No. 54), Class Counsel and Defendants' Counsel worked with the designated claims administrator, RG/2 Claims Administration ("RG/2" or the "Claims Administrator"), to issue the court-approved Notice to the 249 identified Class Members. *See* Declaration of Christopher Q. Davis ("Davis Decl.") at ¶¶ 59-71. The Class Members were mailed a Notice and were provided

- 1 -

the opportunity to exclude themselves by submitting requests for exclusion and/or file objections to the Settlement. *Id.* at Ex. 2[1] at ¶¶ 10 and 11. As set forth in greater detail below, the response to the Notice was very positive – to date no objections and no requests for exclusions were received.

For these reasons, Class Counsel, on behalf of the Participating Class Members, and without objection from Defendants, respectfully request that the Court grant the instant motion.

## I.    LITIGATION HISTORY.

### A.    Factual and Procedural History.

On July 6, 2018, Named Plaintiff Tyrone Bannerman filed a Class Action Complaint (the "Complaint") against Defendants in the Southern District of New York on behalf of himself and all Drivers, Leads, and Helpers who performed delivery work for Ralph Lauren starting at Ralph Lauren's Warehouse in Long Island City (the "Ralph Lauren Warehouse"), or who otherwise performed delivery services for Ralph Lauren pursuant to the Logistics Services Contract between Air-Sea and Ralph Lauren, alleging violations of the FLSA and the NYLL by regularly expecting the Named Plaintiff and putative Class to perform work "off-the-clock" by performing compensable work during unpaid meal breaks. *See* Davis Decl. ¶ 3; *see also* Dkt. No. 1; Ex. 1 at ¶ 1.5. The Complaint also alleged that Defendants violated the NYLL by failing to provide accurate wage statements. *Id.* The Complaint sought recovery of unpaid wages, NYLL statutory penalties and attorneys' fees and costs, interest, and liquidated damages. *Id.* at ¶ 4.

On September 7, 2018, Air-Sea and Ralph Lauren each filed an Answer to the Complaint and denied the claims and Plaintiffs' entitlement to relief. *Id.* at ¶ 6; *see also* Dkt. Nos. 21, 22. Thereafter, on September 11, 2018, Plaintiff Jean Alvarez opted in to this case by filing a consent

---

[1]    All references to Exhibits ("Ex.") refer to the exhibits attached the Declaration of Christopher Q. Davis submitted herewith.

form to join form with the Clerk of the Court. *Id.* at ¶ 5; *see also* Dkt. No. 23. The Lead Plaintiffs then filed a Motion for Conditional Certification of an FLSA Collective Action (the "FLSA Motion") on October 10, 2018. *Id.* at ¶ 7; *see also* Dkt. No 26. The Parties fully briefed the FLSA Motion and submitted opposition and reply briefs to the Court on November 26, 2018. *Id.* at ¶ 8; *see* Dkt. Nos. 32, 33.

While the FLSA Motion was pending before this Court, the Parties agreed to explore settlement of the putative Class's claims though a non-binding mediation session, which is discussed in detail below. *Id.* at ¶ 9. The Parties selected Dina Jansenson, Esq., an experienced class and collective action mediator, to oversee the mediation. *Id.* In anticipation of the mediation, the Parties agreed to the scope of mediation-related discovery, which included, but was not limited to: (1) job descriptions for Drivers, Leads, and Helpers from 2012 – 2018; (2) the Lead Plaintiffs' personnel files; (3) employee handbooks from 2012 – 2019; (4) Defendant Air- Sea's compensation and timekeeping policies and related communications; and (5) damages data, including weeks worked, rates of pay, and time records for employees who performed delivery services for Ralph Lauren originating at the Ralph Lauren Warehouse from January 2015 to December 2018. *Id.* at ¶ 10. From that information, Plaintiffs were able to extrapolate hours work for the entire Class Period. As part of this process, Air-Sea produced, and Class Counsel reviewed, relevant documents for the entire class which cumulatively covered hundreds of pages of material. The mediation was held over a full day on March 28, 2018 and resulted in a settlement in principle. *Id.* at ¶ 11. On July 3, 2019, the parties entered into a settlement agreement and submitted that agreement to the Court with the Plaintiffs' Unopposed Motion for Preliminary Approval. *Id.* at ¶ 51; *see also* Dkt. Nos. 42-44. After the Parties' initial submission to the Court, Air-Sea became aware that the number of Class Members was greater than anticipated. *Id.* at ¶

52. As such, following additional arm's length negotiations between Plaintiffs, Air-Sea and Ralph Lauren, the Parties agreed to amend the settlement agreement to increase the Gross Settlement Amount. *Id.* at ¶ 54. On August 23, 2019, Plaintiffs submitted the revised agreement to the Court with Plaintiffs' Amended Unopposed Motion for Preliminary Approval. *Id.* at ¶ 55; *see also* Dkt. Nos. 47-49.[2] On September 19, 2019, the Court granted Plaintiffs' Amended Unopposed Motion for Preliminary Approval and ordered a final approval hearing for January 24, 2020. *Id.* at ¶ 58; *see also* Dkt. No. 51.

### B.    Overview of Investigation and Discovery.

After being retained by the Named Plaintiff, Tyrone Bannerman, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses for the Drivers, Leads, and Helpers. *Id*. at ¶ 12. Prior to filing the Complaint, Class Counsel conducted multiple in-depth interviews with the Named Plaintiff as well as other putative members of the class – Jose Vargas and Livingston Ferguson – to determine the hours that they worked, the wages they were paid, their compensation structure, the nature of their duties and responsibilities, and other information relevant to their claims. *Id*. at ¶ 16. Notably, Lead Plaintiff Bannerman held two of the three positions during their employment with Air-Sea. *Id.* at ¶ 13. After filing the Complaint, Class Counsel also interviewed another putative class member – Jean Alvarez – about his experiences working for Defendants, including but not limited to his compensation, job duties, and hours worked. *Id*. at ¶ 17. Mr. Alvarez retained Class Counsel to represent him, elected to join this lawsuit by filing a consent to join form with the Clerk of the Court (Dkt. No. 23), and then became one of the Lead Plaintiffs in this case. *Id*. at ¶ 18. Class Counsel focused their

---

[2]    Plaintiffs' counsel realized the incorrect version of the settlement agreement was filed with the August 23, 2019 motion papers and thus filed the correct version of the Amended Settlement Agreement on September 4, 2019. See Dkt. No. 50-1.

investigation and legal research in this case on the underlying merits of the Lead Plaintiffs' claims, the damages to which they, and the putative Class, were entitled, and the propriety of proceeding on a class and/or collective basis. *Id*. at ¶ 15.

As set forth above, in preparation for the mediation, Plaintiffs' Counsel reviewed and analyzed large amounts of time and payroll data for the Class, provided electronically by Air-Sea. *Id.* at ¶ 20. In addition to reviewing the documents provided by Air-Sea, Class Counsel also continued to conduct factual investigations of the Lead Plaintiffs and class members' claims through numerous detailed interviews of the Lead Plaintiffs and other non-party witnesses and the drafting and execution of a sworn declarations from the Lead Plaintiffs about their experiences as Leads and Helpers during the relevant Class Period. *Id.* at ¶ 21. Plaintiffs' Counsel also conducted extensive legal research on matters such as class certification standards and risk, decertification standards and risks, factually similar cases, summary judgment risks, risks attendant to off-the- clock litigation, Defendants' anticipated defenses, and the Lead Plaintiffs' and the putative Class's damages. *Id.* at ¶ 22.

### C.   <u>Settlement Negotiations.</u>

As set forth above, on March 28, 2019 the Parties engaged in an all-day mediation session under the direction of mediator, Dina Jansenson Esq., an experienced class and collective action mediator. *Id.* at ¶ 23. During the mediation, the Parties each presented their legal and factual assessments of the case and discussed the merits of the Parties' positions. *Id.* at ¶ 24. Specifically, Defendants produced summary data that included dates of employment, rates of pay and timekeeping records, which Class Counsel used to perform damages calculations for the Class. *Id.* at ¶ 25-27. Based on these calculations, Class Counsel presented a settlement demand for Drivers, Leads, and Helpers collectively. *Id.* at ¶ 28. As a result of mediation, the Parties reached

an agreement as to the resolution of FLSA and NYLL claims as defined in the Complaint, the terms of which are set forth in the settlement agreement that was submitted to the Court on July 3, 2019. *Id.* at ¶ 29; *see also* Dkt. No. 42-44. Thereafter, the Defendants determined that the putative Class included more individuals than originally provided to Class Counsel for purposes of calculating class wide damages. *Id.* at ¶ 52. After arm's length negotiations between the Parties on how to address this issue, the Parties ultimately agreed to modify the original settlement agreement to proportionally increase the gross settlement sum to provide for payments to each of the additional Class Members for their Qualified Workdays. *Id.* at ¶ 54. Thereafter the Parties submitted an amended version of the Motion for Preliminary Approval and Amended Settlement Agreement to the Court on August 23, 2019. *Id.* at ¶ 55; *see also* Davis Decl., Ex. 1 Settlement Agreement (hereinafter "Ex. 1"). In Plaintiffs' Counsel's estimation and weighed in light of the attendant risks presented by litigating this matter further, the settlement reached represents a meaningful percentage of the recovery, that the Plaintiffs would have achieved had the Court granted conditional class and/or collective action certification, defeated Defendants anticipated motion(s) for decertification, prevailed on all of their claims at trial, survived an appeal, and sought to enforce and collect upon a judgment. *Id.* at ¶ 30. More specifically, based on Plaintiffs' Counsel's damages assessment of the underpayment, which included assessments as to the frequency of missed unpaid meal breaks based on information provided by the Lead Plaintiffs and other non-party witnesses, Class Counsel found that class members likely missed meal breaks between 3 to 4 times a week. Thus, the recovery on the dollar, calculated off the Gross Settlement, is approximately 94% (or $0.94 on the dollar) of the underpayment assuming class members

missed their meal breaks 4 times a week, and 125% (or $1.25 on the dollar) of the underpayment assuming class members missed their meal breaks 3 times a week. *Id.* [3]

To perform the damages calculations Class Counsel formulated educated assumptions as to the amount of off-the-clock work performed by the Class Members. These assumptions were based on interviews with the Lead Plaintiffs as to the nature of their work as a Leads and Helpers, their knowledge of the nature of the work of Drivers, documentary evidence produced during pre-mediation discovery, and non-party witness interviews conducted by Plaintiffs' counsel. *See generally,* Davis Decl. Specifically, Plaintiffs' counsel had numerous in-person and telephone conferences with the Lead Plaintiffs to review documents produced by Defendants, discuss the facts and circumstances of the off-the-clock work they performed (and witnessed others perform) while employed by Defendants as a Lead and/or Helper. *Id.* at ¶¶ 16-19. For the purposes of the FLSA motion, which occurred prior to any deposition testimony, the Lead Plaintiffs, with the assistance of counsel, drafted affidavits, which they signed under penalty of perjury, that provided detailed testimony regarding the off-the-clock work they claim to have performed and reasonable inferences as to the time spent performing such off-the-clock work. *See* Dkt. Nos. 28-1 and 28-2. Additionally, in order to further corroborate the Lead Plaintiffs' estimated off- the-clock work, Plaintiffs' counsel interviewed two (2) non-party witnesses, both of whom worked for Defendants as Drivers and/or Leads during the applicable Class Period. Finally, Class Counsel reviewed hundreds of pages of documentary evidence provided in pre-mediation. *Id.* at ¶ 20.

---

[3] The recovery on the dollar, calculated off the Net Settlement is 80% of the underpayment based on class members missing their meal breaks 3 times a week, and 60% of the underpayment amounted based on class members missing their meal breaks 4 times a week. In performing the calculations, Class Counsel used a straight time calculation for any hours under 40 hours per week, and an overtime calculation of 1.5 times of straight time for any hours worked over 40 hours per week.

At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis. *Id.* at ¶ 31. As stated in the legal argument below, the settlement reached in this complex wage and hour collective action constitutes a reasonable compromise of a bona fide dispute involving a myriad of vigorously contested legal and factual issues.

After Plaintiffs learned that the number of Class Members was larger than anticipated, the Parties negotiated to increase the settlement amount proportionally by the number of Qualified Workdays worked by the additional Class Members. *Id.* at ¶ 52.

**D.**     **The Plaintiffs' Unopposed Motion for Preliminary Approval.**

On July 3, 2019, the Plaintiffs, without opposition from Defendants, moved for preliminary approval of the class settlement, scheduling a fairness hearing, and related relief, including, appointment of Plaintiffs' counsel as class counsel and approval of the proposed Class Notices. *Id.* at ¶ 51; *see also* Dkt. Nos. 42-44. On August 23, 2019, after Defendants learned that the class size was significantly more than previously anticipated and the Parties engaged in additional negotiations on how to address such, Plaintiffs moved, without opposition from Defendants, for preliminary approval of an amended class settlement. *See* Dkt. Nos. 47-49; *see also* Dkt. No. 50-1. On or about August 26, 2019, Defendants satisfied the notice requirements of the Class Action Fairness Act of 2005 ("CAFA"). *Id.* at ¶ 57.

Subsequently, on September 19, 2019, the Court granted the Plaintiffs' Second Unopposed Motion for Preliminary Approval. *Id.* at ¶ 58; *see also* Dkt. No. 51. Prior to issuing the Notice to the Class, the Parties requested minor edits to the Notices, which were non-substantive and intended only to avoid confusion for Class Members. *See* Dkt. No. 52. On October 16, 2019, the Court approved the revised version of the Notice for distribution to the Class Members.  *See* Dkt. No. 53.

- 8 -

### E.      Summary of the Notice and Claims Administration Process.

RG/2 Claims Administration ("RG/2") has served as the Settlement Claims Administrator. *Id.* at ¶ 59.  On October 3, 2019 RG/2 received an electronic file from Defendants' counsel, containing a list Class Members and their contact information (the "Class List"). *See* Boub Declaration, attached to Davis Decl. as Ex. 2, at ¶ 4 (hereinafter, "Boub Decl."). The Class List contained data for 248 Class Members. *Id*. Using the information on the Class List, RG/2 calculated estimated payment amounts for each of the 248 Class Members. *Id.* at ¶ 5. The mailing addresses in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. *Id.* at ¶ 6.

On October 17, 2019 RG/2 caused to be served by First Class U.S. Mail the *Notice of Proposed Class Action Lawsuit Settlement and Final Fairness Hearing* (the "Class Notice") to the 248 Class Members identified on the Class List. *Id.* at ¶ 7. The Class Notice advised Class Members that they could submit a written exclusion request or objection to the settlement postmarked by December 16, 2019. *Id.* at ¶¶ 10 - 11.  The Settlement Agreement provides for a rolling exclusion request/objection deadline of January 15, 2020, for any re-mailed Notices.[4] *Id.* On November 26, 2019, Defense Counsel indicated that one individual was inadvertently left off the Class List. *Id.* at ¶ 8.  As such, there are a total of 249 Class Members. RG/2 Claims calculated this individual's estimated payment and a Notice Packet was mailed to the individual immediately. *Id.*

One Notice was returned with a forwarding address and RG/2 immediately re-mailed the Notice to the forwarding address. *Id.* To date, a total of thirty-four (34) Notices were returned by

---

[4]      If between now and January 15, 2020, RG/2 receives an objection and/or request for exclusion from any of the twenty-eight (28) individuals who were re-mailed Notices, or the individual who was mailed a Notice on November 26, the Parties will immediately notify the Court.

the United States Postal Service ("USPS") as undeliverable. *Id.* at ¶ 9. RG/2 Claims performed address searches for these 34 Notices and was able to locate new addresses for twenty-eight (28) individuals. *Id.* New Notices were re-mailed to 28 Class Members whose addresses were located through RG/2 Claims' address searches. *Id.* A total of six (6) Notices remain undeliverable. *Id.* Stated otherwise, 243 of the 249 Notices (*i.e.*, 97.6%) have not been returned as undeliverable and are presumed to be successfully delivered to the eligible Class Members. *Id.*

To date, there have been no requests for exclusion and no objections to the settlement. *Id.* at ¶ 10 and 11. Unless any exclusion requests are received by January 15, all 249 Class Members are eligible to be paid their portion of the Net Settlement Fund. *Id.* at ¶ 12.

## II.   OVERVIEW OF THE SETTLEMENT TERMS.

### A.   The Settlement Fund.

The Parties agreed to settle this case for a Gross Settlement Amount of up to five hundred forty-eight thousand, four hundred dollars and zero Cents ($548,400.00). *See* Ex. 1 at ¶ 1.13. The Gross Settlement Amount covers the Net Settlement Fund, attorneys' fees and costs for Class Counsel, Service Awards to Lead Plaintiffs Tyrone Bannerman and Jean Alverez, and Claims Administration fees and costs. *Id.* at ¶ 3.

In order to receive a Settlement Distribution Check from the Net Settlement Fund, a Class Member must become a Participating Class Member. A Participating Class Member means those Class Members who are eligible to receive a Settlement Distribution Check because they chose not to opt out of the settlement. *Id.* at ¶ 1.22. Each Participating Class Member will receive a settlement sum calculated based on the allocation formula set forth in the settlement agreement and further detailed below. *Id.* at ¶ 3.5.3. Any amount of the Net Settlement Fund that is not paid to a Participating Class Member (whether because of delivery failures or failures by Participating

Class Member to timely and properly present Settlement Distribution Checks for payment, or otherwise), shall be refunded to the Defendants. *Id.* at ¶ 3.5.6.

**B.**     **Releases.**

The Settlement Agreement provides that the Lead Plaintiffs, as consideration for Service Awards approved by this Court, release the Releasees from any and all liability, damages, expenses, or costs arising under any claim, including but not  limited to all claims for discrimination, retaliation, or other unlawful termination and claims for any way and hour claim, including without limitation claims for attorneys' fees and costs arising therefrom, for the entire Class Period. *Id.* at ¶ 4.1. The Settlement Agreement also provides that all Participating Class Members (*i.e.* all Class Members who do not opt-out) are deemed to have released Releasees from any and all liability, damages, expenses or costs arising under the NYLL and other applicable state or local wage statutes, including without limitation claims for attorneys' fees and costs arising therefrom for the entire Class Period (the "State/Local Release"). *Id.* at ¶ 4.2. In addition to this State/Local Release, by presenting a Settlement Distribution Check for payment, each Participating Class Member shall be deemed (1) to have consented to join the Litigation for purposes of asserting FLSA claims, and (2) to have released the Releasees from any and all liability, damages, expenses, or costs arising under the FLSA, including without limitation claims for unpaid overtime and liquidated damages, attorneys' fees and costs arising therefrom, for that portion of the Class Period pertaining to FLSA claims as set forth in Section 4.3 of the Settlement Agreement (the "FLSA Release").  *Id.* at ¶ 4.3.

**C.**     **Allocation Formula.**

Each Participating Class Member's individual settlement sum under the Settlement Agreement shall be determined on a pro rata basis based on the number of Qualified Workdays

- 11 -

worked by the Participating Class Member during the Class Period. *Id.* at ¶ 3.5.  The pro rata share will be calculated as follows: by dividing the total number of Qualified Workdays in the Class period for each individual Participating Class Member by the total number of Qualified Workdays in the Class Period for all Participating Class Members and multiplying that percentage by the Net Settlement Fund. *Id.* at ¶ 3.5.3. Qualified Workdays are defined as any workday in which a Participating Class Member worked four (4) or more hours in that day. *Id.* at ¶ 1.26.

Pursuant to the Settlement Agreement, Air-Sea shall transfer the Gross Settlement Amount to a Qualified Settlement Fund ("QSF") no more than ten (10) business days after the Effective Date and then, the Claims Administrator will mail out to each Participating Class Member his or her relevant Settlement Distribution Check no more than twenty-one (21) days after the Effective Date. *Id.* at ¶ 3.7.

Each Participating Class Member's settlement amount will be attributed as follows: one-half as a wage payment, and one-half as non-wage income. *Id.* at ¶ 3.9. The employer-side tax obligations, including FICA, shall be paid by Air-Sea separate and apart from the Gross Settlement Amount. *Id.* at ¶ 1.13. The fifty percent (50%) allocated as wages will be reported on IRS Form W-2 and be subject to deductions for employee FICA obligations (at the rate of 7.65 %) and the withholding of all applicable local, state, and federal income and payroll taxes. The amount of federal income tax withholding will be based upon a flat withholding rate of twenty-eight percent (28%) (Treas. Reg. § 31.3a02(g)-l(a)(2)), income tax withholding with respect to New York State will be based upon a flat withholding rate of nine point seventy-seven percent (9.77%) (New York State Personal Income Tax Regulations § 171.4(b)(1)), and income tax withholding with respect to New York City will be based upon a flat withholding rate of four percent (4.0%) (New York City Personal Income Tax on Residents Regulations § 291.1(b)), in addition to any other applicable

federal, state, or local employment or other taxes. The fifty percent (50%) allocated as non-wage income will be reported on IRS Form 1099 and have no taxes withheld by the Claims Administrator, or paid by Air-Sea, because those payments are attributable to the settlement of all claims with respect to NYLL penalties and FLSA and NYLL liquidated damages. *Id.*

### D.   Attorneys' Fees and Litigation Costs.

Consistent with the Settlement Agreement and without objection from Defendants, Class Counsel will apply for payment from the Gross Settlement Amount for (a) litigation costs and expenses, (in an amount not to exceed $3,841.45) and Settlement Administration Costs not to exceed eight thousand dollars ($8,000) and (b) attorney fees of one hundred eighty-two thousand, seven hundred and ninety-eight dollars and seventeen cents ($182,798.17), representing 33% of the Gross Settlement Amount. *Id.* at ¶¶ 3.2; 3.4. Contemporaneous to the filing of this motion, Plaintiffs' counsel separately submits a motion for approval of attorneys' fees of 33.33% of the Gross Settlement Amount and actual litigation costs and expenses in accordance with Second Circuit precedent.

### E.   Service Payments.

In addition to their individualized awards under the allocation formula, the Lead Plaintiffs, Tyrone Bannerman and Jean Alverez, will apply for a payment in the form of a Service Award as recognition of the services they rendered on behalf of the Class. Mr. Bannerman and Mr. Alverez will apply to receive no more than ten thousand dollars ($10,000) each as a service award. *Id.* at ¶ 3.3. Enhancement awards of this type are commonly awarded in wage and hour litigation. *See Damassia v. Duane Reade, Inc.*, 2009 WL 5841128, at *4 (S.D.N.Y. July 27, 2009).

The Service Award has been allocated to Mr. Bannerman and Mr. Alverez because they were instrumental in litigating this matter. Davis Decl. at ¶ 16, 17. Mr. Bannerman served the

Class by assisting with the preparation of the Complaint. *Id*. at ¶ 16. Additionally, both Mr. Bannerman and Mr. Alverez assisted Class Counsel's factual investigations of claims, the drafting and executing of their declaration, and reviewing and explaining documents. *Id.* at ¶ 16, 17. Both Lead Plaintiffs also prepared for, attended and participated in the full day mediation, which required that they take the day off from work. The Lead Plaintiffs also provided crucial information on Air-Sea's policies regarding overtime compensation, work performed by Drivers, Leads, and Helpers during their meal breaks, and other evidence corroborating collective and/or class-wide treatment that were useful in mediation. *Id.* Both Lead Plaintiffs, in-person and via telephone calls, also assisted in reviewing evidence produced by Air-Sea and provided critical information in interpreting the actual wages they were paid, their hours worked, the nature of their duties and responsibilities, and other information relevant to their claims. *Id.*

## III.   PLAINTIFFS SUBMIT THAT THE RULE 23 SETTLEMENT CLASS MEETS THE LEGAL STANDARD FOR CLASS CERTIFICATION.

Plaintiffs submit that, for settlement purposes, there is a basis to certify a class under Federal Rule of Civil Procedure 23(e).[5] Specifically, Plaintiffs respectfully request that the Court certify the following settlement class under Federal Rule of Civil Procedure 23(a) and (b)(3) (the "Class") for purposes of effectuating the settlements:

> All persons employed by Air-Sea at any time during the Class Period as a Driver, Lead, or Helper who performed delivery work for RLC originating at the RLC Warehouse, or who otherwise performed delivery services for RLC pursuant to the Logistics Services Contract between Air-Sea and RLC, that involved driving to or from, or performing work at, an RLC facility (other than the RLC Warehouse) or an RLC customer location, for at least one Qualified Workday.

*See* Ex. 1 at ¶ 1.5.

---

[5]     Defendants do not concede that class or collective certification of any of the claims asserted would be proper in contested litigation, and they have expressly reserved their right to contest class or collective certification in this matter (should the settlement not be approved) or in any other matter alleging the same or similar claims.

Under Rule 23(a), a class action may be maintained if all the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### A.   Numerosity.

Plaintiffs submit that they easily satisfy the numerosity requirement because there are 249 Class Members. Davis Decl.¶¶ 63, 66. Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

### B.   Commonality.

Plaintiffs submit that the proposed settlement class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983). Courts construe the commonality requirement liberally. *Id.*

Plaintiffs submit that this case involves numerous common issues. Notably, one such common issue is that Defendants allegedly subjected Plaintiffs to the same unlawful compensation policies and practices – namely, Plaintiffs allege that Class Members were not paid for "off-the-clock" working time, including compensable time worked during their lunch breaks.

- 15 -

Plaintiffs contend that common issues in this case – ones that will generate a common answer – are whether or not Defendants' unlawful policies and practices set forth above, including, *inter alia*: (i) failing to compensate Class Members for meal breaks; and (ii) unlawful implementation of an automatic meal break deduction, including the failure to monitor lunch breaks and use of an improper means for voiding the auto-deduction. *See, e.g.*, *Lassen v. Hoyt Livery Inc.*, 3:13-cv-1529, 2014 WL 4638860, at *9 (D. Ct., Sep. 17, 2014) (finding commonality where it was undisputed that all class members were subject to at least one uniform policy, "the legality or illegality of [which] ... provide[d] the unifying thread to satisfy the commonality requirement of Rule 23(a)(2)."). In the absence of class certification and settlement, individual Class Members would be forced to individually litigate each of these issues of fact.

### C.    Typicality.

Rule 23 requires that the claims of the representative party be typical of the claims of the class. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (internal quotations omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

The Named Plaintiffs contend that their claims arose from the same factual and legal circumstances that form the basis of the Class Members' claims. The Named Plaintiffs contend that all Class Members were subject to the same common policies and practices. *See* Dkt. No. 1.

Plaintiffs also shared the same job titles of the Class Members – Drivers, Leads, and Helpers– and the same job duties. *See* Davis Decl. at ¶ 13. Additionally, Plaintiffs claim the same alleged common unlawful practices, namely, that Defendants failed to record off-the-clock work, mainly during unpaid meal breaks, and consequently failed to properly pay them for all hours worked. *Id.* at ¶ 3. These practices allegedly subjected Plaintiffs to overtime work without proper compensation. The Class Members also commonly allege that Defendants failed to keep accurate records of time worked. *Id.*

Plaintiffs submit that their alleged wage and hour claims arise from the same factual and legal circumstances that form the basis of the Class Members' claims, and so they contend that they satisfy the typicality requirement. *See Frank*, 228 F.R.D. at 182 (finding that class members satisfied the typicality requirement where "all class members . . . allege that Kodak failed to pay them . . . overtime wages for hours worked in excess of forty per week during the relevant time period"); *Perez v. Allstate Ins. Co.*, No. 11-cv-1812 (JFB), 2014 WL 4635745, at *3 (E.D.N.Y. Sept., 16, 2014) (holding that "[b]ecause plaintiffs have established that [plaintiffs insurance adjusters] across New York, including the named plaintiffs, shared common job duties, plaintiffs have met the typicality requirement."); *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 414 (S.D.N.Y. 2013), *on reconsideration in part on other grounds*, 293 F.R.D. 578 (S.D.N.Y. 2013) (finding the typicality requirement satisfied because there was evidence of a company document containing "uniform description of plaintiffs' duties" and other evidence that class members has the same "baseline responsibilities…").

### D.    Adequacy of the Named Plaintiffs and Class Counsel.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that

the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Central Parking Systems of New York*, 05-cv-5237, 2007 WL 2872455, at *7 (S.D.N.Y. 2007) (quoting *Denney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (citation and internal quotation marks omitted). Plaintiffs submit that there is no evidence or indicia that the Named Plaintiffs have any interests that are or would be antagonistic or at odds with Class Members. *See Diaz v. Eastern Locating Service Inc.*, 10-cv-4082, 2010 WL 2945556, at *2 (S.D.N.Y. July 22, 2010); *Clark v. Ecolab Inc.*, 07-cv-8623-PAC, 2009 WL 6615729, at *5 (S.D.N.Y. Nov. 27, 2009).

Plaintiffs also submit that their counsel meets the adequacy requirement of Rule 23(a)(4) because its "experience, knowledge of this area of law, work invested in identifying the potential claims in this action, and ability to commit sufficient resources to representing the class also satisfy the Rule 23(g) requirements for appointment as class counsel." *Spicer v. Pier Sixty, LLC*, 269 F.R.D. 321, 337-338 (S.D.N.Y 2010) (citing *Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 346 (S.D.N.Y. 2004)). Accordingly, reference to the Davis Declaration supports the conclusion that counsel is qualified and the requirements of 23(a)(4) are met. *Id.* at ¶¶ 72-97. Among other things, Plaintiffs' counsel has previously been appointed as Class Counsel and co-Class Counsel in numerous class litigations. *Id.*

### E.   Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class

- 18 -

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

Certification under Rule 23(b)(3) will allow Class Members to opt out of the settlement and preserve their right to seek damages independently. This approach protects Class Members' due process rights and is consistent with the Supreme Court's decision in *Ortiz v. Fibreboard Corp.*, which explains that due process requires an opportunity to opt out of significant monetary relief. *Ortiz*, 527 U.S. 815, 846-48 (1999).

1.   *Common Questions Predominate.*

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. County of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 139 (2d Cir. 2001)).

Here, Plaintiffs contend that Class Members' common factual allegations and common legal theory – that Defendants violated federal and state wage and hour laws by requiring Class Members to perform work off-the-clock that resulted in unpaid wages during unpaid lunch breaks – predominate over any factual or legal variations among class members. *See Torres v. Gristede's Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees

overtime pay," and "this issue predominates over any individual calculations of overtime wages").

2. *A Class Action is a Superior Mechanism.*

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *see also Amchem*, 521 U.S. at 617. Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: the class members' interest in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[6]

Here, the Class Members contend that they have limited financial resources with which to prosecute individual actions with smaller individual damages amounts. Regarding the forum, Plaintiffs contend that concentrating the litigation in this Court is desirable because the great majority of the allegedly wrongful conduct occurred within the jurisdiction of this Court and will conserve judicial resources. *See Damassia v. Duane Reade*, 250 F.R.D. 152, 164 (S.D.N.Y. 2008).

## IV.   FINAL APPROVAL IS APPROPRIATE PURSUANT TO RULE 23(e) BECAUSE THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.

Rule 23(e) requires court approval of a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine whether a settlement is procedurally fair, courts examine the negotiating process leading to the settlement. *Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche*

---

[6]       Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial").

*Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine whether a settlement is substantively fair, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

### A. The Proposed Settlement is Procedurally Fair.

The Settlement is procedurally fair because it was reached through arm's-length negotiations after experienced counsel had conducted substantial discovery, allowing them to evaluate the merits of Plaintiffs' claims. *See Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010); *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 WL 476009, at *4 (S.D.N.Y. Jan. 6, 2010). A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116; *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

Here, the settlement was reached after Plaintiffs' counsel had conducted a thorough investigation, evaluated the claims and defenses, and negotiated extensively with Defendants. Plaintiffs obtained payroll records for the majority of Class Members' Qualified Workdays, job descriptions, policy documents, and interviewed the Named Plaintiffs and non-party witnesses, all of which enabled them to perform accurate damages calculations. Davis Decl. ¶¶ 15-22. Plaintiffs used this information to construct a damages model based on the data and calculate damages. Moreover, Defendants produced hundreds of pages of documents to Plaintiffs relevant to the claims in this matter, including but not limited to: (i) handbooks; (ii) policy documents; (iii) personnel records; (iv) payroll records, and (v) various other relevant documents. *Id*. at ¶ 10. The

Parties also had lengthy discussions setting forth their legal positions. *Id.* at ¶ 23-31. From these sources, counsel for both Parties evaluated the strengths and weaknesses of the claims and defenses.

Following the initial production of mediation-related discovery, on or about March 28, 2019, Plaintiffs and Defendants participated in a full-day mediation before Dina Jansenson, an experienced and well-respected negotiator, which was ultimately successful. *Id.* at ¶¶ 23, 32. After reaching an initial settlement the Parties, by and through counsel, engaged in further negotiations when the Defendants determined that there were substantially more Class Members within the definition of the Class than originally expected. *Id.* at ¶ 52. These additional arms' length negotiations between counsel resulted in a modification to the original settlement that proportionally increased the gross settlement sum to provide for payments to additional Class Members based on their Qualified Workdays. *Id.* at ¶ 54.

This arm's-length negotiations between counsel, including the involvement of a well-respected neutral mediator who specializes in this area of the law, creates a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116.

**B.  The Proposed Settlement is Substantively Fair.**

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *Grinnell*. *Id.* at 463. The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;  (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of

the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell,* 495 F.2d at 463. All the *Grinnell* factors weigh in favor of approval of the Settlement Agreement.

          1.     <u>*Litigation Through Trial Would be Complex, Costly, and Long (Grinnell Factor 1).*</u>

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex, and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato*, 236 F.3d 78. This case is no exception, with approximately 249 class members. Davis Decl. ¶¶ 63, 66.

Although the parties have already undertaken time and expense investigating and preliminarily litigating this matter, further litigation without settlement would necessarily result in substantial additional expense and delay. Plaintiffs would move for class and collective certification; which Defendants would vigorously oppose. A full discovery schedule would be required, including the potential for expensive electronic and expert discovery. And, to the extent certification was granted, preparing and putting on evidence on the pertinent factual and legal issues would consume tremendous amounts of time and resources for both sides, as well as require substantial judicial resources to adjudicate the parties' disputes. A further trial of the damages issues, even if permitted on a representative basis (again, a disputed point), would be costly and further delay closure. In addition, even after judgment, there would the potential for appeal, thereby extending the duration and expense of the litigation. This settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

2.      *The Reaction of the Class Has Been Positive (Grinnell Factor 2).*

Notice of the settlements has been issued to the Class Members and the reaction has been extremely positive. To date, there are no objections to the Settlement and no Class Member has submitted a request for exclusion. Boub Decl. ¶¶ 10, 11. As such, the participation rate is effectively 100% which is extremely high, even in an opt-out settlement such as this.

Numerous federal courts have held that even a relatively high percentage of objectors or opt outs will not necessarily preclude approval of a class settlement. *See, e.g., Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir. 1987) (citing numerous cases in which class settlements were approved despite the fact that significant percentages, ranging from 15% to 56%, of relevant Class Members opted out of the settlement or otherwise objected); *see also U.S. v. City of New York*, 2015 WL 1063403, at *14 (E.D.N.Y. 2015) (approving settlement were 6.7% of eligible claimants (98 out of 1,470), a relatively small percentage, objected).

Here, as there are no objections and no requests for exclusions, it is clear that the Class Members favored the settlement, and thus the second *Grinnell* factor weighs in favor of final approval.

3.      *Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Grinnell Factor 3).*

Although preparing this case through trial would require thousands more hours of discovery work for both sides, the Parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig*, 391 F.3d 516, 537 (3d Cir. 2004). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted).

The Parties' investigation and discovery here meets this standard. Class Counsel has conducted extensive investigation of the claims in the lawsuit, including, but not limited to, numerous interviews and follow up discussions with the Lead Plaintiffs and non-party witnesses and the review of hundreds of pages of documents produced by Defendants. *Id.* at ¶¶ 12-22. Class Counsel has also reviewed and analyzed policies, time, and payroll data. *Id.* Class Counsel analyzed documents and, based on such, prepared comprehensive damages analysis. *Id.* at ¶ 26. Finally, the Parties exchanged and debated legal arguments concerning certain highly contested points, engaged in extensive settlement discussions, including a full-day mediation session with an experienced wage-and-hour mediator.

4. *Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5).*

While the Plaintiffs believe that their claims have been asserted in good faith and have merit, they also recognize that Defendants have mounted considerable defenses to liability and damages. In weighing the risks of establishing liability and damages, the court "must" weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).

The Lead Plaintiffs claim that Defendants violated the FLSA and NYLL by expecting or requiring them to perform work "off-the-clock," primarily by working through the unpaid portion of their meal breaks. *Id.* at ¶ 3. Lead Plaintiffs also allege that Defendants violated the NYLL by failing to provide Plaintiffs and the putative class with accurate wage statements. *Id.* Defendants dispute that Class Members were required to work off-the-clock during their unpaid meal period. *Id*. Even if the Lead Plaintiffs were to succeed on proving off-the-clock work, they would nonetheless need to prove the Defendants had actual or constructive knowledge of such time worked.

Defendants each asserted two other strong defenses: (1) Air-Sea asserted that the Class Members were exempt employees pursuant to the motor carrier exemption, *see* 29 C.F.R. § 782, and (2) Ralph-Lauren asserted that it was not a joint-employer of Plaintiffs and Class Members. Both arguments have a strong likelihood of success at summary judgment and/or trial.

First, the motor carrier exemption under the FLSA and NYLL applies to individuals who are (1) employed by a motor carrier or motor private carrier, as defined in 49 U.S.C. § 13102, (2) drivers, driver's helpers, or loaders whose duties affect the safe operation of motor vehicles in transportation on public highways in interstate or foreign commerce, and (3) not covered by the small vehicles exception. Factors (1) and (3) are undisputed, and factor (2) is indisputable with respect to Class Members who worked as Drivers.  As such, the Drivers claims faced significant risks in proceeding to litigation.  Additionally, Air-Sea presented evidence at the mediation that the duties of Helpers and Leads also affect the safe operation of motor vehicles in transportation on public highways in interstate commerce, which similarly created real risk for the Helpers and Leads claims.

Second, Ralph Lauren alleges that they do not meet the test for joint employment because they do not have any contractual right to, and in fact did not, exercise any control over: (1) the work assigned to, or the work schedules for, any Air-Sea employees; (2) decisions whether to pay employees for missed meal breaks; (3) Air-Sea's pay policies; (4) Air-Sea's employee wage statements; or (4) any other Air-Sea employee policies or practices alleged to be in violation of the FLSA or NYLL.

In short, while the Lead Plaintiffs continue to believe in the strength and merits of their case, and Class Counsel has and will continue to capably represent the Lead Plaintiffs and putative class and collective members' interests in this litigation, they recognize that Defendants presented

significant, and potentially dispositive arguments, that pose a significant risk to the chances for class-wide recovery, favoring final approval of the Settlement Agreement.

5.     *Establishing a Class and Maintaining it Through Trial Would Not Be Simple (Grinnell Factor 6).*

While the Plaintiffs and Class Counsel similarly continue to believe that they could obtain class certification in contested proceedings, they recognize that Defendants strongly dispute this. Given pertinent precedent and the arguments presented by Defendants, Plaintiffs recognize that this issue also presents a considerable risk, and that a determination on class certification would be reached only after further discovery and intense, exhaustive briefing by both Parties.

Notably, Plaintiffs and the putative class face substantial risk in pursuing final certification of both their NYLL class action and their FLSA collective action, particularly in light of the Supreme Court's decisions in *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) and *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). Class Counsel faces serious risks on the Rule 23 requirements of commonality and predominance because (i) whether Defendants had knowledge of any off-the-clock work would be determined on a supervisor by supervisor basis and therefore is not maintainable on a class or collective basis; and (ii) the damages calculation would require numerous determinations concerning each Drivers, Leads, and Helpers hours, pay rates, and knowledge as to time worked off-the-clock on an individualized basis.

Plaintiffs' wage claims are based on allegations of a common unlawful policy compensation policies and practices – namely, requiring off-the-clock work, as set forth in section III B, *supra*. However, notwithstanding Plaintiffs' position, off-the-clock overtime cases similar to this case are frequently susceptible to differing proof and individualized inquiry on matters such as what factors impacted whether an employee was able to take a meal break, if and how an employee could record a no-lunch, and employer knowledge of the time worked off-the-clock.

Given the possibility of individualized inquiry, several federal courts have begun to deny class certification in cases such as this one. *See e.g. Desilva v. N. Shore Long Island Jewish Health Sys., Inc.,* 27 F.Supp.3d 313, 321 (E.D.N.Y.2014) (in a case involving off-the-clock lunch time violations the court decertified the FLSA collective, finding no uniform compensation policy that violated the law and also denied class certification, finding the commonality was not satisfied); *Mendez v. U.S. Nonwovens Corp.*, 314 F.R.D. 30 (E.D.N.Y. 2016) (putative Rule 23 class of factory and warehouse workers, failed to show that employer had general policy of automatically deducting 30 minutes of unpaid time for lunch, regardless of whether employee was able to take a bona fide meal period, and of encouraging employees to work through meal breaks, as required to satisfy commonality requirement for class certification); *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 346–52 (N.D. Ill. 2012) (decertifying an off-the-clock class lunch break case because significant factual differences exist among Plaintiffs' employment locations and work settings, supervision, and meal break practices); *Aguilera v. Waukesha Memorial Hosp., Inc.*, 13-cv-1245, 2015 WL 3791469, at *4-6 (E.D.Wis., June 18, 2015) (finding no commonality amongst class members in a class action alleging violation of the FLSA because of interruptions during lunch and the use of an automatic lunch deduction procedure); *Miller v. ThedaCare Inc.*, 15-cv-506, 2018 WL 472818, at *10 (E.D.Wis., Jan. 18, 2018) (finding commonality requirement for Rule 23 class certification was not met because multiple factors impacted whether an employee was able to take a meal break on any given day and whether the employee, if unable to do so, could effectively record a no-lunch entry).

In opposing class certification, Defendants would likely argue that these and a variety of other individualized questions exist, that a class action is not a superior method to resolve Plaintiffs' claims, and that a class trial would not be manageable. Risk, expense, and delay

permeate such processes and settlement eliminates such. This factor favors final approval.

6.    *Defendant's Ability to Withstand a Greater Judgment is Not Clear (Grinnell Factor 7).*

The $548,400.00 maximum settlement is also fair, reasonable, and adequate. *See, e.g.,* *Frank,* 228 F.R.D. at 186 (a defendant's ability to withstand a greater judgment weighs against approval). Even if protracted litigation were to yield a judgment larger than the settlement amount, a "defendants' ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *See In re Austrian*, 80 F.Supp.2d at 178 and fn. 9. There is no basis for believing Defendants are unable to withstand a greater judgment, this is a neutral factor.

7.    *The Settlement Funds are Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9).*

Class Counsel has determined that this case presents significant risks that militate toward compromise. Defendants agreed to settle this case for a substantial amount, $548,400.00, which, according to the damages calculations of Class Counsel, represents a considerable portion of the wage underpayment recovery. *See* Davis Decl. ¶ 30 (the recovery on the dollar is $0.94 on the dollar assuming 4 missed lunches a week and $1.25 on the dollar assuming 3 missed lunches a week).  This settlement amount represents a good value given the attendant risks of litigation, and, because the recovery might not be greater if Plaintiffs succeeded on all claims at trial and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.*

- 29 -

(quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Here, each Participating Class Member will receive a payment based upon their number of Qualified Workdays in either Long Island City or Maspeth. The allocation formula for the underpayment of overtime wages was determined based on Class Counsel's factual inquiry. Davis Decl. ¶ 36. Notably, despite significant certification risk, Class Counsel and the Lead Plaintiffs obtained results on behalf of the class, including negotiating for a gross settlement amount accounting for a significant portion of the estimated underpayments. Weighing the benefits of the settlements against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

Accordingly, the *Grinnell* factors all weigh in favor of final approval of the Settlement Agreement. The Settlement Agreement is the result of extensive, arms'-length negotiations by counsel well-versed in wage and hour class and collective actions. Importantly, a settlement like this one, reached with the help of a third-party neutral, enjoys a "presumption that the settlement achieved meets the requirements of due process." *See Johnson v. Brennan*, 10 Civ. 4712 CM, 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011); (citations omitted); *see also In re Penthouse Executive Club Compensation Litigation*, No. 10 Civ. 1145 at *2, 2013 WL 1828598 (S.D.N.Y. April 30, 2013) (granting preliminary approval in part based on participation of neutral mediator). Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant final approval.

## V.   <u>THE COURT SHOULD APPROVE THE FLSA SETTLEMENT.</u>

Class Counsel, on behalf of the Class Members also respectfully request that the Court certify the settlement class under the FLSA for purposes of effectuating the settlement. Since under

an FLSA settlement, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *See McKenna v. Champion Intern. Corp.,* 747 F.2d 1211, 1213 (8th Cir. 1984); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *3 (S.D.N.Y. Aug. 16, 2011). Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982); *see also Reyes*, 2011 WL 4599822, at *6. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id.* at 1353–54.

If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved. *Id.* at 1354; *Reyes*, 2011 WL 4599822, at *6. *See Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *see also Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 206 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., 2014 WL 185628, at *7 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (quotation omitted).

In evaluating the settlement of the FLSA claims, this Court should consider the totality of the circumstances, including the following factors: (1) the range of possible recovery; (2) the extent

to which the settlement enables the parties to avoid the burdens and expenses in establishing their claims and defenses; (3) the seriousness of the litigation risks; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.  *See Wolinsky*, 900 F. Supp. 2d at 335.

As set forth in Section IV *supra*, respectively, the settlement: (1) is substantial and is within the range of reasonableness of recovery when compared to the various possibilities of recovery in light of the litigation risks faced; (2) avoids the burden and expense of discovery and a trial on the merits that would have an uncertain potential outcome; (3) eliminates the serious litigation risks faced, including certification and decertification risks; (4) was reached with the help of a third-party neutral and resolved through an arm's-length settlement process with attorneys well-versed in complex wage and hour litigation; and (5) was reached by and through experienced counsel who were able to fully evaluate the strengths and weaknesses of the claims and defenses.  As such, settlement of the FLSA claims in this case meet the *Cheeks* "fair and reasonable" standard.  *See* 796 F.3d at 206.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter the Order granting final approval of the settlement. (Class Counsel's request for an award of costs and fees is separately submitted, and Defendants do not oppose that request.)

Dated: January 9, 2020
New York, New York

Respectfully submitted,

___/s/_____

Christopher Q. Davis, Esq.
Rachel M. Haskell, Esq.
**The Law Office of Christopher Q. Davis**
80 Broad Street, Suite 703
New York, New York 10004

Telephone: (646) 430-7930
*Class Counsel*