**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TYRONE BANNERMAN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> -against- <br><br> AIR-SEA PACKING GROUP INC. and RALPH LAUREN CORP., <br><br> Defendants. | Civil Action No. 1:18-cv-06146 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES**
**AND REIMBURSEMENT OF EXPENSES**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT .....................................................................................................................2

I.   THE PERCENTAGE OF THE FUND METHOD IS THE PREFERRED METHOD FOR AWARDING ATTORNEYS' FEES IN COMMON FUND CASES IN THE SECOND CIRCUIT ................................................................................................................2

II.  THE *GOLDBERGER* FACTORS SUPPORT CLASS COUNSEL'S FEE APPLICATION ...5

    1.   Class Counsel's Time and Labor ........................................................................6

    2.   Magnitude and Complexity of the Litigation ........................................................8

    3.   Risk of Litigation ...............................................................................................11

    4.   Quality of Representation ..................................................................................14

    5.   Fee in Relation to the Settlement ......................................................................15

    6.   Public Policy Considerations .............................................................................18

III. THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF ONE-THIRD OF THE SETTLEMENT FUND ...........................................19

IV.  CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF THEIR LITIGATION EXPENSES .........................................................................................................22

CONCLUSION ................................................................................................................22

# TABLE OF AUTHORITIES

Cases                                                                                  Page(s)

*Aboud v. Charles Schwab & Co.*,
No. 14 Civ. 2712, 2014 WL 5794655, at *5 (S.D.N.Y. Nov. 4, 2014) ........................ 16

*Aguilera v. Waukesha Memorial Hosp., Inc.*,
13-cv-1245, 2015 WL 3791469, at *4-6 (E.D.Wis., June 18, 2015) ........................... 12

*A.H. Phillips v. Walling*,
324 U.S. 490, 493 (1945) ........................................................................ 18

*Alleyne v. Time Moving & Storage Inc.*,
264 F.R.D. 41, 59 (E.D.N.Y. 2010) ........................................................... 17

*Ansoumana v. Gristede's Operating Corp.*,
201 F.R.D. 81, 89 (S.D.N.Y. 2001) ............................................................. 9

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of
Elections*, 522 F.3d 182, 191 (2d Cir. 2008) .................................................. 4

*Asare v. Change Grp. N.Y., Inc.*,
No. 12 Civ. 3371, 2013 WL 6144764, at *17 (S.D.N.Y. Nov. 18, 2013) ..................... 5

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
450 U.S. 728, 743 (1981) ....................................................................... 9

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467, 477 (S.D.N.Y. 2013) ..................................................... passim

*Behzadi v. Int'l Creative Mgmt. Partners, LLC*,
No. 14 Civ. 4382, 2015 WL 4210906, at *2-3 (S.D.N.Y. July 9, 2015) ..................... 11

*In re Boesky Sec. Litig.*,
888 F. Supp. 551, 562 (S.D.N.Y. 1995) ........................................................ 21

*Calle v. NDG Coffee Shop, Inc.*,
16-cv-7702 (RJS), 2018 WL 1779347, at *2 (S.D.N.Y. Apr. 12, 2018) ..................... 20

*Camilotes v. Resurrection Health Care Corp.*,
286 F.R.D. 339, 346–52 (N.D. Ill. 2012) ..................................................... 12

*Chavarria v. N.Y. Airport Serv., LLC*,
875 F. Supp. 2d 164, 177 (E.D.N.Y. 2012) ..................................................... 4

*Clark v. Ecolab Inc.*,
Nos. 07 Civ. 862, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *2, *8-9
(S.D.N.Y. May 11, 2010)    ................................................................................17, 22

*Clem v. Keybank, N.A.*,
No. 13 Civ. 789, 2014 WL 2895918, at *1, *9-10 (S.D.N.Y. June 20, 2014) ............................16

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172, 178, 182-87 (W.D.N.Y. 2011) ....................16

*Desilva v. N. Shore Long Island Jewish Health Sys., Inc.*,
27 F.Supp.3d 313, 321 (E.D.N.Y.2014) ................................................................12,

*Detroit v. Grinnell Corp.*,
495 F.2d 448, 470 (2d Cir. 1974) ..............................................................11

*Diaz v. E. Locating Serv.*,
No. 10 Civ. 4082, 2010 WL 5507912, at *8 (S.D.N.Y. Nov. 29, 2010) ........................18

*Dolgow v. Anderson*,
43 F.R.D. 472, 487 (E.D.N.Y. 1968), *reversed and remanded on other grounds*, 438 F.2d 825
(2d Cir. 1970) ..................................................................................................19

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
No. 98 Civ. 4318, 2001 WL 709262, at *6 (S.D.N.Y. June 22, 2001) .........................11

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174, 189 (W.D.N.Y. 2005) .............................................................9, 15

*Fujiwara v. Sushi Yasuda Ltd.*,
No. 12 Civ. 8742, 2014 WL 5840700 (S.D.N.Y. Nov. 12, 2014) ...............................10

*In re Gilat Satellite Networks, Ltd.*,
No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007) .......................15

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436, 468 (S.D.N.Y. 2004) ............................................................5, 14

*Goldberger v. Integrated Res. Inc.*,
209 F.3d 43, 51 (2d Cir. 2000) ................................................................passim

*Grace v. Ludwig*,
484 F.2d 1262, 1267 (2d Cir. 1973), *cert denied*, 416 U.S. 905, 94 S. Ct. 1610 (1974) .............19

*Guallpa v. N.Y. Pro Signs Inc.*,
No. 11-cv-3133 (LGS) (FM), 2014 WL 2200393, at *10 (S.D.N.Y. May 27, 2014) .................20

iii

*Hernandez v. Immortal Rise, Inc.*,
306 F.R.D. 91, 102 (E.D.N.Y. 2015) ....................................................................2, 3

*Hernandez v. Merrill Lynch & Co., Inc.*,
No. 11 Civ. 8472, 2013 WL 1209563, at *1, *8-10 (S.D.N.Y. March 21, 2013) .......16

*Hicks v. Morgan Stanley, et. al.*,
No. 01 Civ. 10071, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005) .................20

*In re Indep. Energy Holdings PLC Sec. Litig.*,
No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003) .................15

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F.Supp. 2d 180, 183 n. 3 (S.D.N.Y. 2003) .......................................................22

*J.I. Case Co. v. Borak*,
377 U.S. 426, 433-34 (1964) ....................................................................................19

*Johnson v. Brennan*,
No. 10 Civ. 4712, 2011 WL 4357376, at *15 (S.D.N.Y. Sept. 16, 2011) ...................5

*Karpus v. Borelli (In re Interpublic Sec. Litig.)*,
No. 03 Civ. 1194, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004) ......................5

*Khait v. Whirlpool Corp.*,
No. 06–6381, 2010 WL 2025106, at *1, *8-9 (E.D.N.Y. Jan. 20, 2010) ...............17, 18

*Khalil v. Original Old Homestead Restaurant, Inc.*,
657 F. Supp.2d 470, 476-477 (S.D.N.Y. 2009) .......................................................16

*In re Lloyd's Am. Trust Fund Litig.*,
No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26,2002) .................21

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423, 437 (2d Cir. 2007) .......................................................................17, 18

*Mendez v. U.S. Nonwovens Corp.*,
314 F.R.D. 30 (E.D.N.Y. 2016) ..............................................................................12

*McLaughlin v. IDT Energy*,
2018 WL 3642627, at *7 (E.D.N.Y., 2018) ...............................................................4

*McDaniel v. Cnty. Of Schenectady*,
595 F.3d 411, 417 (2d Cir. 2010) ..............................................................................3

iv

*Miller v. ThedaCare Inc.*,
15-cv-506, 2018 WL 472818, at *10 (E.D.Wis., Jan. 18, 2018) .................................................. 13

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) ................................................................................. 3

*In re Nassau Cty. Strip Search Cases*,
12 F. Supp. 3d 485, 492–93 (E.D.N.Y. 2014) .......................................................................... 17

*In re Nigeria Charter Flights Litig.*,
No. 04-CV-304, 2011 WL 7945548, at *5 (E.D.N.Y. Aug. 25, 2011), *report and recommendation adopted,* No. 04-CV-304, 2012 WL 1886352 (E.D.N.Y. May 23, 2012) ........ 17

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*,
No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ................................. 8, 19, 21

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
991 F.Supp.2d 437, 440 (E.D.N.Y., 2014) ............................................................................ 4, 5

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797, 809 (1985) .................................................................................................. 19

*In re Polaroid ERISA Litig.*,
No. 03 Civ. 8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007) ........................................ 4

*Powell v. Metro One Loss Prevention Servs. Grp.*,
12-CV-4221 (LAP) (DF), 2015 WL 9287121, at **2-3 (S.D.N.Y. Feb. 5, 2015) ...................... 20

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
912 F. Supp. 97, 100 (S.D.N.Y. 1996) ................................................................................... 9

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb.24, 2012) ......................................... 21

*In re Ramp Corp. Sec. Litig.*,
No. 05 Civ. 6521, 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 4, 2008) ................................ 3, 4, 5

*In re RJR Nabisco, Inc. Sec. Litig.*,
No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug.24, 1992) ....................................... 21

*Rosendo v. Everbrighten Inc.*,
No. 13-CV-7256 (JGK) (FM), 2015 WL 1600057, at *8-9 (S.D.N.Y. Apr. 7, 2015) ................ 20

*Sand v. Greenberg*,
No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) ...................................... 3, 10

*Savoie v. Merch. Bank*,
166 F.3d 456, 460-61 (2d Cir. 1999) ..............................................................5

*Sukhnandan v. Royal Health Care of Long Island LLC*,
No. 12 Civ. 4216, 2014 WL 3778173, at *9 (S.D.N.Y. July 31, 2014) ...............................passim

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) ..............................................................4, 18

*Singh v. City of New York*,
418 F. Supp. 2d 390, 397 (S.D.N.Y. 2005) ..............................................................12

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) ..............................................................3, 4

*Taft v. Ackermans*,
No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) ...............................14

*Thind v. Healthfirst Management Services, LLC*,
2016 WL 7187627, at *5 (S.D.N.Y. 2016) ..............................................................12

*Tiro v. Pub. House Invs., LLC*,
No. 11 Civ. 7679, 2013 WL 4830949, at *13 (S.D.N.Y. Sept. 10, 2013) ...............................8

*Varljen v. H.J. Meyers & Co.*,
No. 97 Civ. 6742, 2000 WL 1683656, at *5 (S.D.N.Y.  Nov. 8, 2000) ...............................5

*Velez v. Majik Cleaning Serv., Inc.*,
No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ...............................4, 15

*Velez v. Novartis Pharm. Corp.*,
No. 04 Civ. 09194, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ...............................17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96, 121 (2d Cir. 2005) ..............................................................2, 3, 4

*Westerfield v. Washington Mut. Bank*,
Nos. 06 Civ. 2817, 08 Civ. 00287, 2009 WL 5841129, at *4 (E.D.N.Y. Oct. 8, 2009) ...............3

*Williams v. Epic Security Corp.*,
368 F.Supp.3d 651, 658 (S.D.N.Y., 2019) ..............................................................20

*Willix v. Healthfirst, Inc.*,
No. 07 Civ. 1143, 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011) ...............................16

*Yuzary v. HSBC Bank USA, N.A.*,
No. 12 Civ. 3693, 2013 WL 5492998, at *1, 9-10 (S.D.N.Y. Oct. 2, 2013) ...............................16

*Zeltser v. Merrill Lynch & Co.,*
No. 13 CIV. 1531 FM, 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) .............................21

STATUTES

29 U.S.C. § 216 ...................................................................................................................9

Federal Rule of Civil Procedure 23 ....................................................................................9

## INTRODUCTION

In connection with the Unopposed Motion for Final Approval of the Class Action Settlement and Approval of the FLSA Settlement ("Motion for Final Approval"), concurrently filed in the above-captioned action,[1] Plaintiffs respectfully move this Court for an award of attorneys' fees and costs in the amount of one hundred eighty-two thousand seven hundred and nighty eight dollars and seventeen cents ($182,798.17) or 33.33% of the Gross Settlement Amount, plus reimbursement of out-of-pocket expenses in the sum of no more than three thousand eight hundred forty-one dollars and forty-five cents ($3,841.45), and costs of Settlement Administration in the sum of no more than eight thousand dollars ($8,000).

During the past year plus litigating this putative class and collective action, Class Counsel spent over 250 attorney, paralegal, and administrative hours prosecuting this case. *See* Declaration of Christopher Q. Davis in Support of Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses dated January 9, 2020 ("Davis Fee Decl.") at ¶ 5, Ex. B. This includes time spent investigating the Named Plaintiff's claims pre-suit, researching legal issues, drafting a detailed complaint, reviewing documents, interviewing the Named Plaintiff, Opt-in Plaintiff and other witnesses, calculating damages for the class, drafting a mediation statement, evaluating outcomes and litigation filings for similar off-the-clock overtime settlement outcomes and preparing for and attending the mediation, negotiating with Defendants to reach a settlement for 249 class members, moving this Court for preliminary and final approval of the class-wide settlement, and assisting with administering the settlement. Davis Fee Decl. ¶¶ 45-77. Multiplying

---

[1]     For a detailed account of the factual and procedural background of this case, including settlement negotiations and administration, Class Counsel respectfully refers the Court to the Memorandum of Law and the supporting Declaration of Christopher Q. Davis in connection with the Motion for Final Approval of the same date as this Motion. In addition, any defined terms referred to in this memorandum of law are consistent with those used in the concurrently filed Motion for Final Approval.

these hours by the hourly rate of each attorney, paralegal, and staff member results in a current lodestar amount of approximately $70,000. *Id.* at ¶ 7; Ex. B.

Class Counsel believes that the value of their efforts on behalf of the Class Members is reflected by majority support and 100% participation in the settlement. *Id.* at ¶ 75. Based on Plaintiffs' pre-settlement investigation and subsequent damages calculations, many of the Class Members will be adequately compensated – receiving approximately ninety-four cents ($0.94) to one dollar and twenty-five cents ($1.25) on the dollar of their underpayment by participating in this settlement. *Id.* at ¶ 35.

Notwithstanding these strong results, Class Counsel's efforts to date have been without compensation, and their entitlement to payment has been wholly contingent upon the result achieved. *Id.* at ¶ 30. For the reasons set forth below, Class Counsel respectfully submits that the attorneys' fees and expense reimbursements they seek are fair and reasonable under the applicable legal standards and should be awarded considering the contingency risk undertaken and the result achieved.

## **ARGUMENT**

## I. **THE PERCENTAGE OF THE FUND METHOD IS THE PREFERRED METHOD FOR AWARDING ATTORNEYS' FEES IN COMMON FUND CASES IN THE SECOND CIRCUIT**.

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *See, e.g., Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015); *Sukhnandan v. Royal Health Care of Long Island LLC,* No. 12 Civ. 4216, 2014 WL 3778173, at *9 (S.D.N.Y. July 31, 2014); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013); *accord. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). "Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on

prosecution by private attorneys general, attorneys who fill . . . [that] role must be adequately compensated for their efforts." *Beckman*, 293 F.R.D. at 477 (citations and internal quotation marks omitted); *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."). If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest").

There are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method. *See McDaniel v. Cnty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). The trend in this Circuit is to use the percentage-of-the-fund method in common fund cases like this one. *See, e.g., Id.; Wal-Mart Stores*, 396 F.3d at 121; *Hernandez*, 306 F.R.D. at 102; *Sukhnandan*, 2014 WL 3778173, at *9; *Westerfield v. Washington Mut. Bank*, Nos. 06 Civ. 2817, 08 Civ. 00287, 2009 WL 5841129, at *4 (E.D.N.Y. Oct. 8, 2009) (following the "trend" and adopting the percentage-of-the-fund method); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage-of-the-fund method); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same).

There are several reasons that courts prefer the percentage method. First, the percentage method "directly aligns the interests of the class and its counsel [because it] provides a powerful incentive" to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 121 (internal quotation marks and citation omitted); *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at

*2 n.2 (S.D.N.Y. Jan. 4, 2008); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 991 F.Supp.2d 437, 440 (E.D.N.Y. 2014); *McLaughlin v. IDT Energy*, 2018 WL 3642627, at *7 (E.D.N.Y., 2018).

The percentage of the fund method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 177 (E.D.N.Y. 2012) ("[T]he percentage method is intended to mirror the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients."); *Strougo ex rel. The Brazilian Equity Fund, Inc.*, 258 F. Supp. 2d at 262.

This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay. 522 F.3d 182, 191 (2d Cir. 2008). Although *Arbor Hill* is not controlling because it does not address a common fund fee application, it supports use of the percentage of the fund method. *Beckman*, 293 F.R.D. at 477 (*Arbor Hill* supported award of one-third of fund).

Second, the percentage-of-the-fund method promotes early resolution and eliminates the incentive for plaintiffs' lawyers to increase their billable hours by engaging in excessive and wasteful litigation tactics. The percentage method "provides a powerful incentive for the efficient prosecution and early resolution of the litigation." *WalMart Stores*, 396 F.3d at 121; *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2; *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at *2; *Velez*, 2007 WL 7232783, at *7. This method also discourages plaintiffs' lawyers from running up their billable hours, which is the most significant downside of the lodestar method.

*See Savoie v. Merch. Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method.") (citation omitted); *Karpus v. Borelli (In re Interpublic Sec. Litig.*), No. 03 Civ. 1194, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004) (the percentage method is "much simpler"). As to this point, the parties resolved this case before incurring the expenses of substantive discovery and prolonged motion practice.

Third, the percentage-of-the fund method preserves judicial resources by "reliev[ing] the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Asare v. Change Grp. N.Y., Inc.*, No. 12 Civ. 3371, 2013 WL 6144764, at *17 (S.D.N.Y. Nov. 18, 2013) (quoting *Savoie*, 166 F.3d at 461 n.4). "[T]he primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger*, 209 F.3d at 48-49 (citation omitted); *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2; *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *15 (S.D.N.Y. Sept. 16, 2011). While courts still use the lodestar method as a "cross check" when evaluating the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d at 50; *see, e.g., In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

## II.  THE *GOLDBERGER* FACTORS SUPPORT CLASS COUNSEL'S FEE APPLICATION.

Reasonableness is the benchmark for determining attorneys' fees. In *Goldberger*, the

Second Circuit articulated six factors for courts to consider in determining the reasonableness of

fee applications:

    (1)    the time and labor expended by counsel;
    (2)    the magnitude and complexities of the litigation;
    (3)    the risk of litigation;
    (4)    the quality of representation;
    (5)    the requested fee in relation to the settlement; and
    (6)    public policy considerations.

209 F.3d at 50 (internal quotation marks and citations omitted). All of the *Goldberger* factors

weigh in favor of granting approval of Class Counsel's fee application.

    1.    **Class Counsel's Time and Labor.**

Class Counsel expended substantial time and effort to achieve the $548,400 Settlement

Amount[2] on behalf of the Class. Before the initiation of this action, Class Counsel conducted a

thorough investigation into the merits of the potential claims and defenses. Davis Fee Decl. ¶ 53-

55. Class Counsel focused their investigation and legal research on the underlying merits of Class

Members' claims, the damages to which they were entitled, and the appropriateness of class

certification. *Id.* at ¶ 57.   Class Counsel conducted in-depth interviews with the Named Plaintiff,

Opt-In Plaintiff and non-party witnesses to determine the hours that they worked, the wages they

were paid, their compensation structure, the mechanisms for recording time worked, the nature of

their duties and responsibilities, and other information relevant to their claims. *Id* at ¶60. Counsel

also reviewed thousands of pages of documents produced by Defendants and continued to gather

documents from the Named Plaintiff and Opt-In Plaintiff concerning their employment with

Defendants, including but not limited to pay stubs, timekeeping records, employee handbooks, and

relevant correspondence. *Id*. at ¶ 58. Based on the information provided by the Named and Opt-in

---

[2]    At times in the Settlement Agreement, the Settlement Amount of $548,400 is also referred to as the Gross Settlement Amount. Ex. A at ¶ 1.13.

Plaintiffs, other non-party witnesses, and Class Counsel's review of Defendants' productions, Class Counsel was able to fully assess Plaintiffs' litigation risks related to proceeding as a class and/or collective action. *Id*. at ¶ 59.

After the initial conference and briefing of the FLSA preliminary certification motion, the Parties agreed to engage in an all-day mediation session under the direction of mediator, Dina R. Jansenson, Esq., an experienced class and collective action mediator. *Id*. at ¶ 56. In anticipation of the mediation, the Parties agreed to the scope of mediation-related discovery, which included, but was not limited to: (1) job descriptions for Drivers, Leads, and Helpers from 2012 – 2018; (2) both Plaintiffs' personnel files; (3) Employee handbooks from 2012 – 2019; (4) Defendant Air-Sea's compensation and timekeeping policies and related communications; and (5) weeks worked, rates of pay, and time records for Plaintiffs and the majority of the workdays worked for the putative class from January 2015 to December 2018. *Id.* ¶¶ 43.

The mediation was held over a full day on March 28, 2019 with mediator Ms. Jansenson. *Id*. at ¶ 44. As a result of the mediation, the Parties reached an agreement as to the resolution of FLSA and NYLL claims for the Class Members, as defined in the Amended Complaint, the terms of which are set forth in the Settlement Agreement. *Id.* at ¶ 69; *see also* Ex. A. On or around July 2019, Defendants advised Plaintiffs' counsel that there were substantially more Class Members than expected. After additional arms-length negotiations between counsel for the Partis, the Parties agreed to increase the Gross Settlement Amount proportionally to the number of Qualified Workdays worked by all Class Members. *Id.* at ¶ 68

In performing these and other tasks, Class Counsel has expended over 250 hours of attorney, paralegal, and staff member time – an aggregate lodestar of approximately $70,000. *Id.* at ¶¶ 5, 7. These hours are reasonable for a case like this one and were compiled from

contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. *Id*. Class Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to perform it effectively. *Id.*

Moreover, the requested fee is not based solely on time and effort already expended; rather, it is also meant to compensate Class Counsel for time that will be spent assisting administer the settlement in the future. *Id.* at ¶ 9; *see Beckman*, 293 F.R.D. at 482 ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund"); *see also Tiro v. Pub. House Invs., LLC*, No. 11 Civ. 7679, 2013 WL 4830949, at *13 (S.D.N.Y. Sept. 10, 2013) (fee award also compensates Class Counsel for future time spent administering the settlement); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time."). In Class Counsel's experience, administering class settlements require substantial and ongoing commitment. Davis Fee Decl. ¶ 9. As is common in wage and hour class actions, Class Counsel expects to respond to Class Member inquiries even after final approval, especially after settlement checks are issued. *Id.*

2.      **Magnitude and Complexity of the Litigation.**

The magnitude of this Litigation, involving 249 Class Members, and the complexity of the factual and legal questions involved, further support the reasonableness of the requested fee award.

Under the second *Goldberger* factor, the size and complexity of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996). Courts have acknowledged that wage and hour cases involve complex legal issues: "FLSA claims typically involve complex mixed questions of fact and law . . . These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

"Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as 'opt out' class actions pursuant to Rule 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." *Sukhnandan*, 2014 WL 3778173, at *10. "Justice is served and consistency and efficiency are achieved by having the litigation in one forum because the same set of operative facts are being applied and analyzed under both statutory frameworks." *Beckman*, 293 F.R.D. at 479 (referencing *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001)). However, hybrid cases require the parties to address complicated questions of law.

This case involved several mixed questions of law and fact. In particular, the Parties disputed the facts surrounding whether Defendants violated the FLSA and NYLL by expecting or requiring Class Members to perform work "off the clock," primarily by working through their unpaid 30-minute lunch breaks. These unresolved factual and legal questions support approval of Class Counsel's attorneys' fee request. *See Id*. (size and complexity of the case, including mixed questions of law and fact, supported attorneys' fee award of one third of the common fund); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (mixed questions of law and fact supported court's award of attorneys' fees representing approximately 40% of the

common fund).

Some wage and hour matters are much more complicated and riskier than others. Notably, this case differs markedly from the kinds of wage and hour cases which have been described as "not unduly complex". *See Fujiwara v. Sushi Yasuda Ltd.*, No. 12 Civ. 8742, 2014 WL 5840700 (S.D.N.Y. Nov. 12, 2014). This case is unlike *Fujiwara*, where "obligations under the FLSA and NYLL are relatively clear and liability turns on factual issues." *Id.* at *7. Here, Defendants contend that their compensation policies were lawful, including that the Company maintained lawful overtime and recordkeeping policies and that any overtime worked was compensated. Defendants also contend that Class Members are not entitled to overtime under the motor carrier exemption, which is a fact intensive inquiry.  Thus, Class certification and liability are far from certain and would have required thousands of hours of attorney time and tens of thousands of dollars in costs to establish. In addition, Plaintiffs would have had to overcome Defendants' likely arguments about potentially individualized questions regarding knowledge of overtime hours worked and individual damages amounts based on hours worked, and other issues potentially precluding class and collective certification. In *Fujiwara*, on the other hand, the court noted that "it would likely not have been difficult to certify a class of employees working the same positions as the Class Representatives at a single restaurant location." 2014 WL 5840700 at *7. Here, the class and collective consist of individuals who worked in the field with minimal direct supervision, including of whether they were working through their lunch breaks, worked out of warehouses in Long Island City and Maspeth, and had numerous different supervisors.

Since *Fujiwara*, other judges in this Circuit have continued to follow the more common practice of awarding a percentage of a settlement fund in wage and hour actions where settlement is reached early in the litigation, particularly when complex legal and factual issues make liability

and class certification far from certain. *See, e.g., Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14 Civ. 4382, 2015 WL 4210906, at *2-3 (S.D.N.Y. July 9, 2015) (approving attorneys' fees award of one-third of the fund in case brought on behalf of unpaid interns).

      3.    **Risk of Litigation**.

The risk of litigation is another important factor in determining a fee award. Uncertainty that a recovery will be obtained is highly relevant in determining the reasonableness of a fee award. *See Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974), abrogated on other grounds by *Goldberger*, 209 F.3d 43. "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id.* at 471.

The substantial risk of Class Counsel recovering no compensation after years of litigation supports Class Counsel's anticipated fee request. "Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees." *Beckman*, 293 F.R.D. at 479 (quoting *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2001 WL 709262, at *6 (S.D.N.Y. June 22, 2001)) (internal quotation marks omitted).

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of tremendous risk. Davis Fee Decl. ¶¶ 28-35. Large-scale wage and hour cases of this type are, by their very nature, complicated and time-consuming. *Id.* Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a major investment of time, energy, and resources. *Id*. Also, due to the contingent nature of the fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. *Id*. Here, Class Counsel stood to gain nothing in the event the case was unsuccessful. *Id*.

Moreover, the facts and circumstances of this case presented numerous hurdles to a successful recovery. *Id*. at ¶¶ 31, 32. Plaintiffs' off-the-clock claims hinged on their ability to prove actual or imputed knowledge that Class Members were working off-the-clock. *Id*.; *see also Singh v. City of New York*, 418 F. Supp. 2d 390, 397 (S.D.N.Y. 2005) (employee "is only entitled to compensation for those hours of work performed of which the employer had actual or constructive knowledge"). Plaintiffs would also have to overcome Defendants' defenses that individualized inquiries predominated. *Id*.; *Thind v. Healthfirst Management Services, LLC*, 2016 WL 7187627, at *5 (S.D.N.Y. 2016) (holding that an inquiry into whether an employer had actual or constructive knowledge of overtime hours worked was "necessarily individualized" for a sub-class of employees who testified they were not instructed to work overtime). These cases illustrate that cases like this are vulnerable to denial of class or collective certification and/or being decertified later on. *See e.g.*, *Desilva v. N. Shore Long Island Jewish Health Sys., Inc.*, 27 F.Supp.3d 313, 321 (E.D.N.Y.2014) (in a case involving off-the-clock lunch time violations the court decertified the FLSA collective, finding no uniform compensation policy that violated the law and also denied class certification, finding the commonality was not satisfied); *Mendez v. U.S. Nonwovens Corp.*, 314 F.R.D. 30 (E.D.N.Y. 2016) (putative Rule 23 class of factory and warehouse workers, failed to show that employer had general policy of automatically deducting 30 minutes of unpaid time for lunch, regardless of whether employee was able to take a bona fide meal period, and of encouraging employees to work through meal breaks, as required to satisfy commonality requirement for class certification); *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 346–52 (N.D. Ill. 2012) (decertifying an off-the-clock class lunch break case because significant factual differences exist among Plaintiffs' employment locations and work settings, supervision, and meal break practices); *Aguilera v. Waukesha Memorial Hosp., Inc.*, 13-cv-1245, 2015 WL

3791469, at *4-6 (E.D.Wis., June 18, 2015) (finding no commonality amongst class members in a class action alleging violation of the FLSA because of interruptions during lunch and the use of an automatic lunch deduction procedure); *Miller v. ThedaCare Inc.*, 15-cv-506, 2018 WL 472818, at *10 (E.D.Wis., Jan. 18, 2018) (finding commonality requirement for Rule 23 class certification was not met because multiple factors impacted whether an employee was able to take a meal break on any given day and whether the employee, if unable to do so, could effectively record a no-lunch entry). Clearly, the hurdles that plaintiffs in wage and hour cases face in maintaining collective action certification through trial are substantial.  In order to minimize risk, Class Counsel reviewed prior off-the-clock lawsuits for unpaid overtime and wage and hour violations, specifically those involving the employer's knowledge of off-the-clock work. *Id*. at ¶ 33.

Despite very real risks, Class Counsel took this case despite being a small firm with limited resources. *Id*. at ¶ 28. Class Counsel skillfully settled the matter for substantial value. The contingent risk in this matter was palpable at many points. *Id*.

Class Counsel takes on difficult cases like this one because we believe it is important work. *Id*. Class Counsel takes seriously our responsibility to continue to move the law in a direction favorable for employees, despite the risk of major losses. *Id.* While Plaintiffs believe that they could ultimately establish both liability and damages here, this would require significant factual development and legal argument. *Id*. at ¶ 34. Class Counsel is experienced and pragmatic, and understands that the resolution of liability issues, the outcome of a potential trial, and the inevitable appeals process are inherently uncertain in terms of both the outcome and the duration. Despite these risks, Class Counsel secured a beneficial settlement for the Class Members. *Id*. at ¶ 35. Accordingly, the risk of litigation weighs clearly in favor of Class Counsel's request for attorneys' fees.

4.      **Quality of Representation.**

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467).

The recovery obtained was substantial. Defendants agreed to pay a total of $548,400 to settle this litigation. The settlement represents a substantial recovery for Class Members, particularly in light of the risks of litigation. Davis Fee Decl. ¶¶ 35, 63. These risks included the risk of losing both collective and class certification, having a collective action decertified, losing on the merits, and losing on appeal. *Id.*

Plaintiffs' calculation of total damages based on pre-settlement investigation further supports the conclusion that Class Members will receive adequate compensation for the underpayment of wages. Relative to this estimate, Plaintiffs believe that the Settlement Amount represents a good recovery for the class in light of the very real risk that Plaintiffs would not prevail on all claims since the monetary settlement contemplates compensation at for Class Members' with corroborated and uncorroborated uncompensated overtime work for which they failed to receive overtime pay. The $548,400 Gross Settlement Amount represents an even greater value since it not only compensates Class Members and represents what may be the best result possible; it also gives Class Members a more immediate payment without the attendant delays of litigation, including trial and potential appeal. Notably, based on Class Counsel's damages assessment, the recovery on the dollar calculated on the Gross Settlement is between 94 cents ($0.94) to one dollar and twenty-five cents ($1.25) on the dollar for the underpayment. *Id.* at ¶¶ 35, 63.

Class Counsel has significant experience prosecuting large-scale wage and hour class and

collective actions – weighing in favor of approval of their requested fees. *Id.* at ¶¶ 10-27. In addition to actively litigating several wage and hour class actions, courts in this Circuit have found Christopher Davis to be adequate class counsel in many other wage and hour cases. *Id*. Throughout his career in private practice, whether as lead associate or partner, Christopher Davis has been appointed class counsel more than fifteen (15) times. *Id.* at ¶¶ 11-23. Moreover, Rachel Haskell, a junior partner working on this matter has also been appointed class counsel in the E.D.N.Y. *Id.* at ¶¶ 24-25.

Class Counsel's skill and experience were directly responsible for the favorable settlement and weigh in favor of granting the requested fees. *See Velez*, 2007 WL 7232783, at *8 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a 33.33% contingency fee award); *Frank*, 228 F.R.D. at 189 (citing plaintiffs' counsel's experience as one factor supporting an attorneys' fee award of 40% of the fund).

5.      **Fee in Relation to the Settlement.**

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007). "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *Beckman*, 293 F.R.D. at 481 (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003)) (internal quotation marks omitted). Where the size of the fund is relatively small, courts typically find that requests for a greater percentage of the fund are reasonable. *See In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *5, *16 n.41 (finding a 30% fee would not constitute a windfall "[g]iven the modest size of the [$20 million] settlement"); *see also Beckman*, 293 F.R.D. at 481 (a 33% fee is not a

windfall "because the requested amount is consistent with the norms of class litigation in this circuit" (quoting *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6-7 (E.D.N.Y. Feb. 18, 2011) (internal quotation marks omitted)). In FLSA cases, "one of the most important factors a court should consider in awarding fees is the degree of success obtained…" and "the simple disproportion between a plaintiff's recovery and the fee applied for is not a proper basis for a reduction in an otherwise reasonable fee." *Khalil v. Original Old Homestead Restaurant, Inc.*, 657 F. Supp.2d 470, 476-477 (S.D.N.Y. 2009) (citations omitted).

The size of the $548,400 settlement weighs in favor of granting the requested fee award of approximately one-third (33.33%) of the common fund.[3] Courts in this Circuit have routinely granted requests of similar percentages of the fund in cases with settlement funds similar to or substantially larger than this one. *See, e.g., Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712, 2014 WL 5794655, at *5 (S.D.N.Y. Nov. 4, 2014) (granting plaintiffs' request for an attorney fee award of one-third of the $3.8 million fund in wage and hour settlement); *Clem v. Keybank, N.A.*, 2014 WL 2895918, at *1, *9-10 (S.D.N.Y. June 20, 2014) (awarding class counsel 33% fee award in $3,500,000 settlement of wage and hour misclassification class action); *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *1, 9-10 (S.D.N.Y. Oct. 2, 2013) (awarding attorneys' fee totaling 31.7% of $15,625,000 fund in wage and hour settlement); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *1, *8-10 (S.D.N.Y. March 21, 2013) (awarding 33% of a $7 million settlement in a FLSA and NYLL misclassification case); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178, 182-87 (W.D.N.Y. 2011) (awarding one third fee in $42 million settlement); *Willix*, 2011 WL 754862, at *1, *6-7 (awarding one third of $7.675 million

---

[3]    One-third or 33.33% the common fund is with the range awarded fee percentage for settlements of similar value. *See In re Colgate-Palmolive Co. ERISA Litigation*, 36 F.Supp.3d 344, 349–50 (S.D.N.Y. 2014) (examining empirical studies that reviewed the "[h]istorical data of fees awarded in common fund cases" to assess the appropriate fee award in common fund cases and finding the average fee percentages are around 30%).

settlement fund in wage and hour class action); *Clark v. Ecolab Inc.*, 2010 WL 1948198, at *2, *8–9 (S.D.N.Y. May 11, 2010) (awarding class counsel one third of $6 million settlement fund in wage and hour class action); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *1, *8-9 (E.D.N.Y. Jan. 20, 2010) (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case).

According to Second Circuit precedent, Class Counsel's fee should be calculated as percentage of the gross settlement sum made available to the class, not the net settlement claimed. The Second Circuit is clear that an "allocation of fees by percentage should . . . be awarded on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007). "The value of legal service rendered in the creation of a settlement fund [is not] diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus." *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010); *see also Masters*, 473 F.3d at 437 (reversing the lower court and holding that "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class" and thus fees should be allocated based on "total funds made available, whether claimed or not."); *see also In re Nassau Cty. Strip Search Cases*, 12 F. Supp. 3d 485, 492–93 (E.D.N.Y. 2014) (noting "that the percentage is applied to the total amount recovered on behalf of the class (i.e. the 'common fund'), not to the lesser sum that in all probability will be claimed by members of the class from that fund."); *In re Nigeria Charter Flights Litig.*, No. 04-CV-304, 2011 WL 7945548, at *5 (E.D.N.Y. Aug. 25, 2011), *report and recommendation adopted,* No. 04-CV-304, 2012 WL 1886352 (E.D.N.Y. May 23, 2012) (holding that controlling Second Circuit precedent set forth in *Masters* requires the percentage of the common fund be based on the entire fund not the value of claims made); *Velez v. Novartis Pharm. Corp.,* 2010 WL 4877852, at *21

17

(S.D.N.Y. Nov. 30, 2010) ("[T]his Circuit has ruled that '[a]n allocation of fees by percentage should therefore be awarded on the basis of total funds made available **whether claimed or not.'"**) (emphasis in original) (quoting *Masters,* 473 F.3d at 437).

As explained above, the *Goldberger* factors govern the percentage-of-the-fund fee award, not the amount claimed by class members. *Diaz v. E. Locating Serv.*, No. 10 Civ. 4082, 2010 WL 5507912, at *8 (S.D.N.Y. Nov. 29, 2010) ("[A]lthough the percentage-of-recovery here is based on the entire settlement fund, including the amount that will revert to defendants, rather than on the portion of the fund equal to the claims actually made, the fee requested is nevertheless reasonable in light of the *Goldberger* factors."). As such, Class Counsel's 33.33% fee request is consistent with the norms of class litigation in this Circuit.

6.   **Public Policy Considerations.**

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In awarding attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399. The FLSA and state wage and hour laws are remedial statutes designed to protect workers. *See A.H. Phillips v. Walling,* 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work"). Fair compensation for attorneys who take on such litigation furthers the remedial purpose of the statutes. *Khait*, 2010 WL 2025106, at *8 ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk."); *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and

uncorrected.").

Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discourage future misconduct of a similar nature. *See Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968), *reversed and remanded on other grounds*, 438 F.2d 825 (2d Cir. 1970). Class actions are also an invaluable safeguard of workers' rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964). If courts denied sufficient attorneys' fees, "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id*. Courts, therefore, look with favor upon awarding attorney fees in class actions that "encourage the vigilance of private attorneys general to provide corporate therapy protecting the public investor who might otherwise be victimized." *Grace v. Ludwig,* 484 F.2d 1262, 1267 (2d Cir. 1973), *cert denied*, 416 U.S. 905, 94 S. Ct. 1610 (1974).

In this case, public policy considerations weigh heavily in favor of awarding Class Counsel's requested fee. The requested fees will encourage private attorneys, such as Class Counsel, to investigate and prosecute similar claims, and will encourage employers to review their own pay practices in order to ensure that they are in full compliance with the requirements of the FLSA and NYLL.

## III.   THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF ONE-THIRD OF THE SETTLEMENT FUND.

Following *Goldberger*, courts usually apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50. The Second Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Id.* (citation omitted); *see also Parker*, 2010 WL 532960, at *2 (endorsing the *Goldberger* "cross check[]"). As part of the cross check, the lodestar

is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *See Hicks v. Morgan Stanley, et. al.*, No. 01 Civ. 10071, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005). In calculating the lodestar for cross-check purposes, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50 (citation omitted). Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[.]" *Id.*

In this District, hourly rates of approximately $500 for partners, $300-$400 for senior associates, $100-200 for junior associates and $75-$100 for law clerks have been awarded in employment cases. *See e.g. Williams v. Epic Security Corp.*, 368 F.Supp.3d 651, 658 (S.D.N.Y., 2019 (court found that $ 600 hourly rate for a partner was reasonable and is consistent with other cases in this district); *Powell v. Metro One Loss Prevention Servs. Grp.*, 12-CV-4221 (LAP) (DF), 2015 WL 9287121, at **2-3 (S.D.N.Y. Feb. 5, 2015), *report and recommendation adopted*, 2015 WL 9255338 (S.D.N.Y. Dec. 17, 2015) (setting hourly rate for senior partner in employment case at $ 650); *Calle v. NDG Coffee Shop, Inc.*, 16-cv-7702 (RJS), 2018 WL 1779347, at *2 (S.D.N.Y. Apr. 12, 2018) (approving associates with 5 years experience at $375 each); *Rosendo v. Everbrighten Inc.,* No. 13-CV-7256 (JGK) (FM), 2015 WL 1600057, at *8-9 (S.D.N.Y. Apr. 7, 2015) (citing hourly rates approved for attorneys from another small firm specializing in wage and hour litigation between $200 and $425), *adopted by* 2015 WL 4557147 (S.D.N. Y, July 28, 2015); *Guallpa v. N.Y. Pro Signs Inc.,* No. 11-cv-3133 (LGS) (FM), 2014 WL 2200393, at *10 (S.D.N.Y. May 27, 2014) (same, observing a range of $350 to $600 per hour), *adopted by* 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014).

Courts then consider whether a multiplier is warranted based on factors such as: "(i) the contingent nature of the expected compensation for services rendered; (ii) the consequent risk of

non-payment viewed as of the time of filing the suit; (iii) the quality of representation; and (iv) the results achieved." *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Parker*, 2010 WL 532960, at *2. Courts regularly award lodestar multipliers from 2 to 6 times lodestar. *See, e.g., In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26,2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.,* No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb.24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *Zeltser v. Merrill Lynch & Co.,* No. 13 CIV. 1531 FM, 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) (awarding 5.1 multiplier); *In re RJR Nabisco, Inc. Sec. Litig.,* No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug.24, 1992) (awarding multiplier of six).

Here, a lodestar crosscheck further supports that Plaintiffs' counsels' fee request 33.33% of the fund is appropriate. The actual lodestar amount, to date, in this matter is calculated at approximately $70,000. *See* Ex. B. However, based on Plaintiffs' counsels' experience in finalizing and administering class action settlements of this size, Plaintiffs' counsel anticipates numerous additional hours administering the settlement. The lodestar amount to date was calculated using an hourly rate of $500 for attorney Christopher Davis, $375 for attorney Rachel Haskell, $400 for attorney Mariyam Hussain, and an hourly rate of $100 for the law clerks.

Class Counsel is requesting only a small premium – 2.61 multiplier – on their lodestar to compensate them for the contingent risk factor. Davis Fee Decl. ¶ 7. To date, Class Counsel has spent more than 250 hours litigating, settling and seeking approval of this class action. *Id.* at ¶ 5; Ex. B. The time spent by Class Counsel is described in the accompanying Davis Fee Decl. and Class Counsel's contemporaneous time records attached thereto. *Id.*; Ex. B. The hours worked by Class Counsel result in a lodestar of approximately $70,000. *Id.* at ¶ 7. Moreover, "[b]ecause class

counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Beckman*, 293 F.R.D. at 482 (internal quotation marks and citations omitted). As such, the ratio of Class Counsel's lodestar to the 33.33% fee request will continue to diminish over time as Class Counsel spends additional time working on this case, including preparing for and attending the final fairness hearing, responding to phone calls from the Class Members, and answering question from the Claims Administrator. Davis Fee Decl. ¶ 9; *see Clark*, 2010 WL 1948198, at *9 (holding that a fee request was reasonable as it would compensate class counsel not only for time and effort expended, but also "for time that they will be required to spend administering the settlement going forward.").

## IV.   CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF THEIR LITIGATION EXPENSES.

Pursuant to the Settlement Agreement and approved Class Notice, Class Counsel seek reimbursement of no more than $,3841.45 in litigation costs and expenses, and $8,000 in Claim Administrator's fees.  *See* Davis Fee Decl. ¶ 8, Ex. C.  "Courts typically allow counsel to recover their reasonable out-of-pocket expenses." *Sukhnandan*, 2014 WL 3778173, at *15 (citing *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F.Supp. 2d 180, 183 n. 3 (S.D.N.Y. 2003)). Given that Class Counsel's unreimbursed expenses were incidental and necessary to the representation of the Class they should be approved. Davis Fee Decl. ¶ 8. Moreover, Class Counsel has actually laid out more in expenses than they are asking this court for reimbursement of.  *See* Ex. C.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and enter

an Order: (i) awarding attorneys' fees in the amount of 33.33% of the Gross Settlement Amount,

$ 182,798.17; (ii) expenses and costs in the amount of approximately $3,841.45;  (iii) Claims

Administrator costs in the amount of $8,0000; and (iv) granting such other, further, or different

relief as the Court deems just and proper.

Dated: January 9, 2019
  New York, New York

               Respectfully submitted,

              _____/s/_____
              Christopher Q. Davis, Esq. (CD-7282)
              Rachel M. Haskell (RH-8248)
              **The Law Office of Christopher Q. Davis, PLLC**
              80 Broad Street, Suite 703
              New York, New York 10004
              Telephone: (646) 430-7930
              *Class Counsel*